# CHARLESTON.

## LALLANCE *v.* FISHER.

Submitted January 22, 1887.—Decided April 2, 1887.

1. SALE—TRUSTS AND TRUSTEES—DISMISSAL OF SUIT.

An injunction is awarded upon a bill restraining a trustee from selling the trust-property, which is real estate, upon the ground that there is a defect in the title to part of the property, usury in a portion of the trust-debt, and the existence of other trust-deeds and judgment-liens on the property. An order is subsequently made by the court dissolving the injunction, denying the relief prayed for and dismissing the bill. The trustee then sells the property under and according to the terms of the trust-deed. After the sale is completed by conveying the property to the purchaser, the order dismissing the suit is set aside and leave given the plaintiff to amend his bill, which he does by making the purchasers at the trust-sale and others parties. This amended bill, however, does not allege, that there is any defect in the title to the property sold by the trustee, or that there is any usury in the trust-debt, or uncertainty in any of the trust-debts or judgment-liens or their priorities; but it seeks to set aside the sale, upon the ground that the same was improperly made by reason of the facts disclosed in the bill and proceedings in said suit, and that the reversal of the order dismissing the suit vacated the sale, and upon other specific grounds depending upon extrinsic facts, which the plaintiff wholly failed to sustain by proofs. The court below dismissed the bill. HELD: There was no error in such dismissal of the suit. (p. 517.)

2. SALE—TRUSTS AND TRUSTEES—JUDGMENT-LIEN.

A court of equity will decline to set aside a sale made by a trustee, simply upon the ground that at the time of the sale the trust-property was encumbered by other trusts and judgment-liens, especially where it appears, that there is no uncertainty or controversy as to the amounts and priorities of such liens. (p. 519.)

3. SALE—TRUSTS AND TRUSTEES—FRAUD.

Where the trust-deed provides for a sale for cash, and the creditor instructs the trustee to accept in payment only gold and silver or legal tender currency, the announcement of that fact at the sale without any fraudulent purpose will not vitiate the sale. (p. 519.)

4. SALE—TRUSTS AND TRUSTEES—BURDEN OF PROOF.

It is incumbent upon the party, who asks a court of equity to set aside a sale made by a trustee, upon the ground that the sale was not duly advertised and properly made, to establish said grounds by satisfactory proof.  (p. 521.)

5. SALE—INADEQUACY OF PRICE.

Such sale will not be set aside for inadequacy of price alone, unless the inadequacy is so gross as to justify the presumption of fraud.  A sale for one half the estimated value is not such inadequacy.  (p. 521.)

*Knight & Couch* for appellants.

*Simms & Enslow* for appellees.

SNYDER, JUDGE :

C. N. Lallance and wife by deed, dated November 22, 1875, conveyed to C. E. Hogg, trustee, two separate parcels of real estate in the city of Huntington, Cabell county, the *first*, consisting of a lot on Eighth Avenue, 105 feet wide by 200 feet long, and the second described as lots 27 and 28 in Block 93, fronting 60 feet on Third Avenue and 72 feet on Eighth street, in trust to secure to Henry J. Fisher the sum of $2,500.00 due by note, payable one year after date, and also to secure any future advancements of money by Fisher to Lallance.   In February, 1878, Hogg, trustee, by virtue of said trust-deed advertised said real estate for sale on the 24th day of April, 1878.   Lallance exhibited his bill, and on April 22, 1878, obtained an injunction restraining said sale. The only grounds alleged in the bill for an injunction are, (1) that a small portion of said Eighth Avenue lot is owned by the Central Land Co.; (2) that subsequent to the recordation of said Fisher trust-deed, Lallance had executed another trust-deed on the Third Avenue lots to secure a debt to Weeman, Medler & Co., and a third trust-deed on all of said real estate to secure a debt due Evermont Ward ; (3) that since said deeds had been executed E. S. Holderly, the State of W. Va. and I. F. Stewart had each recovered judgments against the plaintiff and caused the same to be duly docketed in said county ; and (4) that on June 30, 1876, said Fisher had advanced to plaintiff $529.00 in addition to the aforesaid $2,500.00, and that a part of said $529.00 was

usurious interest. The bill prays that a sale by said trustee may be enjoined until the priorities of the liens on said real estate are settled, the title perfected and the $529.00 purged of its usury.

Fisher answered the bill at rules and gave notice, that he would move the court at its August term to dissolve the injunction. He denies that the Central Land Co. owns any part of the real estate sought to be sold or that there is any usurious interest in the said debt of $529.00. He also denies that either the plaintiff or any of the subsequent lien-creditors mentioned in the bill have any equities that can interfere with his right to have said real estate sold under his prior trust-deed.

By consent of parties an order was entered by the court on August 21, 1878, by which the cause was referred to a commissioner to report the number and priorities and dates of all liens on said property and what title, if any, the Central Land Co. has to any part thereof. No direction was given in the decree to the commissioner to notify any one of the time and place of making his report. Whether any notice was in fact given by the commissioner I can not tell, as no part of the report has been included in the record brought before this Court.

On October 31, 1878, the cause was heard on the bill and exhibits, the answers of Fisher and the Central Land Co., replications thereto, the report of the commissioner and the motion of Fisher to dissolve the injunction; and the court then entered a decree dissolving the injunction and dismissing the bill at the plaintiff's costs. In a subsequent portion of this same decree the court finds that the Central Land Co. has title to a part of the lot on Eighth Avenue mentioned in the Fisher trust-deed and undertakes to describe the portion that ought to be sold under said deed, but in doing so, by some blunder, it gives metes and bounds which makes said portion about two miles long by one and one fourth miles wide. The decree then sets forth the liens and their priorities on the trust property. Among these it states two trust-deeds of earlier date than that of Fisher, and several judgment-liens of subsequent date in favor of persons not parties to the suit. It then decrees, that un-

less the plaintiff shall sooner satisfy the debts secured by said various trust-deeds, the said trustees, or any of them, at the request of the *cestuis que trusts*, or any of them, may advertise as required by said deeds and sell the said property, but in selling under the Fisher deed the Eighth Avenue property shall be sold first; and then the decree again declares that " this cause is hereby dismissed. "

Twelve days thereafter on the 12th day of November, 1878, Hogg, trustee, again advertised, that he would by virtue of the Fisher trust-deed sell said property on the 17th day of December, 1878, on which day he cried off the Eighth Avenue property to I. F. Stewart at $985.00, and after crying the Third Avenue property for some time without getting a satisfactory bid, he adjourned the sale to the next day, December 18th, and then sold the Third Avenue property to John H. Russell for $2,880.00 cash, which amount was then paid and by deed dated December 19, 1878, the trustee conveyed said property to Russell, the purchaser. And I. F. Stuart, having failed to pay for the Eighth Avenue property, the trustee re-sold it on the said 18th day of December to H. J. Fisher at the price of $950.00 cash. The record does not show whether or not the trustee has ever made a deed to Fisher for this latter property.

In February, 1879, Lallance and wife exhibited their bill in the Circuit Court of Cabell county against John H. Russell, Henry J. Fisher and others to set aside the sales to said Russell and Fisher upon the following alleged grounds: *First*, That the sales were fraudulent and for a grossly inadequate price; *second*, That the trustee announced at the time of the sale, that he would require the purchase-money to be paid in gold and silver or legal-tender notes, and that this announcement was made in pursuance of a secret arrangement between the trustee and the agent of Fisher and Russell to enable Fisher and Russell to buy the property at a sacrifice; and *third*, That the trustee after offering the property on the 17th of December, adjourned the sale to the 19th, and then without further notice sold the same on the 18th, the day before that to which the sale had been adjourned. This bill also refers to the bill and proceedings in the injunction-suit, which had been dismissed, and the debts

therein reported and operating as liens on the trust-property.

Russell, Fisher and Hogg, trustee, filed separate answers to this bill, denying severally. explicitly and fully, any fraud, collusion or arrangement of any kind in regard to the sale or purchase of said property or combination or conspiracy to produce a sacrifice of it or injure the plaintiff.

Upon notice and the motion of I. F. Stewart, one of the defendants in the suit first herein mentioned against whom the aforesaid decree of October 31, 1878, had been entered on bill taken for confessed, the court, by an order made March 4, 1881, set aside the said decree of October 31, 1878, dismissing the plaintiff's bill, and remanded that cause to rules with leave to the plaintiff to file such new pleadings and make such new parties as he might be advised to be necessary.

In October, 1881, Lallance filed his amended and supplemental bill making the purchasers at the trustee's sale and others new parties. This bill, in addition to the allegations of Lallance and wife in their bill filed in February, 1879, before referred to, avers that the trustee sold the trust property without giving legal and proper notice of the sale, and prays that the sales be set aside, &c.

Fisher, Russell, Hogg, trustee, and others answered this bill denying all the material allegations impeaching the good faith, regularity or validity of the sales. A number of depositions were taken and filed by both the plaintiff and defendants; and an order was made directing these two causes to be heard together.

On August 28, 1884, the court entered a final decree declaring that the plaintiffs were not entitled to any relief and dismissed both causes with costs, and the plaintiff, Lallance, appealed therefrom to this Court.

It is contended for the appellant that the sale by the trustee, Hogg, was made under and by virtue of the aforesaid decree of October 31, 1878, and that when that decree was set aside in 1881, the sale thus made under it was vacated and the court on the final hearing of these causes should have so decreed. This contention, it seems to me, is based

on a mistake of fact as well as law. The advertisement of the trustee and all the facts proved in respect to the sale made by him show conclusively, that the sale was made by virtue of the Fisher trust-deed alone and without any mention of or reference to the said decree of October 31, 1878, or the suit, in which the same was pronounced. The court in that decree denied that the plaintiff was entitled to any relief whatever and dismissed the bill on its merits. No appeal was asked from that decree; nor was any attempt made to reverse or set it aside until 1881, more than two years after it had been pronounced. The sale was made in December, 1878, more than a month after said decree had been entered. The appellant was present at the sale and gave no notice of any intention to set aside said decree. He did not even mention said suit or decree or offer any objection or protest to the sale, so far as the facts proved disclose. The legal title to the property was in the trustee, and he offered the same by virtue of his authority as trustee only. Certainly therefore the former pendency and prior dismissal of said suit could have no effect upon the bidders and purchasers at said sale. The reversal of the decree of 1878, two years after the sale had been made, the purchase-money paid, deeds executed and the purchasers put in possession of the property, could not possibly operate to revive the injunction. The original bill had for its principal object the inhibition of the sale; its other objects were merely incidental to or grounds for the attainment of this principal object. Upon the dissolution of the injunction, therefore, even if the bill had been retained instead of being dismissed, the trustee had a clear right to sell under the trust-deed. Assuming, therefore, that the said decree of October 31, 1878, dissolving the injuction and dismissing the plaintiff's bill, was properly reversed and set aside by the subsequent decree of March 4, 1881, the only effect of the latter decree would be to revive said suit in respect to the matters therein contained other than the injunction which could at that time have no effect on the sale completed long before such revival. In other words, the reversal of said decree can have only the same effect as if the suit had been brought without having obtained the injunction and during the pendency of

the suit the trustee had made the sale by virtue of the trust-deed. The filing of the bill in the second of these causes and the amended and supplemental bill in the first, both filed after the sale, must be treated as bills filed to set aside a sale by a trustee which had been already made and fully executed. (*Graeme* v. *Cullen*, 23 Grat. 266)

Regarding these as suits brought to set aside a completed sale made by a trustee, the question presented is : Do the pleadings and proofs entitle the appellant to have the final decree of the Circuit Court reversed ?

The grounds on which such reversal is sought by the appellant are—First, the pendency of a suit, which disclosed that the trust-property was encumbered by other liens by trust-deeds and judgments, and that the title to a part of the property was imperfect; second, that the trustee for a fraudulent purpose announced at the sale that he would require the purchase-money to be paid in gold and silver or legal tender currency ; third, that the trustee after offering the property on December 17th, the time fixed by the advertisement, adjourned the sale to the 19th and then without further notice made the sale on the 18th ; fourth, that the sale was made without the proper notice ; and fifth, that the property was sold for a grossly inadequate price. These grounds will now be considered in the order in which they have been just stated.

1. It is averred in the first bill filed before the sale, that to a part of the lot on Eighth Avenue the plaintiff has only the equitable title, but this claim is wholly omitted and excluded from the averments of the second bill as well as the amended bill filed after the sale. It must, therefore, be treated as having been abandoned by the plaintiff. The allegations of usury in respect to a part of the debt of Fisher contained in the plaintiff's first bill is also wholly omitted from and abandoned in the subsequent bills filed by him. These matters need, therefore, no further notice. In the commissioner's report filed before the sale in the first suit two trust-deeds to secure debts of date prior to the Fisher trust-deeds are reported ; but in the bills subsequently filed by the plaintiff he avers, that both of these debts had been satisfied, and such appears from the record to have been the

fact. The only enquiry left pertaining to the point now under discussion is whether the existence of the liens of date subsequent to that of Fisher invalidated the sale by the trustee. These liens consisted of two trust-deeds and several judgments, all of which had been duly recorded prior to the date of the sale. There was no dispute or uncertainty as to the amounts or priorities of any of these debts or liens at the time of the sale. All of them were admitted to be subsequent in date and taken subject to the Fisher debt and trust deed. It is unquestionably true, that a trustee may and should on his own motion apply to a court of equity to remove impediments to a fair execution of his trust, to remove any cloud hanging over the title, and to adjust accounts, if necessary, in order to ascertain the actual debt which ought to be raised by the sale, or the amount of prior encumbrances, If he fails to do this in a proper case, the party injured or likely to be injured by his default has an undoubted right to do it, whether such party be the creditor secured by the deed, a subsequent encumbrancer or the debtor himself. (*Rossett* v. *Fisher*, 11 Gratt. 492, 499; *Curry* v. *Hill*, 18 W. Va. 370.)

The facts in this case do not show, that there was any such controversy or uncertainty about the title to the property or the amounts and priorities of the debts, as would have justified the trustee in resorting to a court of equity, much less do they show any right on the part of the debtor to set aside a completed sale made by the trustee. (*Dryden* v. *Stephens*, 19 W. Va. 1; *Spencer* v. *Lee*, Id. 179.)

It is also claimed in this connection, that, because the said decree of October 31, 1878, directed the trustee to sell the Eighth Avenue property first, the sale should be set aside, because he first sold the Third Avenue property. If there could have been anything in this claim, as clearly there was not, it is sufficient to say, that this decree was set aside and wholly annulled by the subsequent decree of March 4, 1881, and could not consequently have any influence on the case as now presented by the record.

2. The trust-deed provided, that the sale should be for cash, and the proof shows, that the sale was so advertised, and that at the sale the trustee by direction of Fisher, the *cestui*

*que trust,* announced to the persons present, that he would require the purchase-money to be paid in gold or legal tender currency, and that the same should be paid in twelve or twenty four hours after the sale—it is not clear which of these two times was fixed for payment. The appellant claims, that this announcement was made to further a fraudulent conspiracy entered into between the agent of Fisher and the defendant, John H. Russell, the president of the only bank in the city of Huntington, in order that they might purchase the property at a sacrifice by preventing competition at the sale. In regard to this matter all the parties, Fisher, Hogg, the trustee, Russell and Perkins, the agent of Fisher, both in their answers to the plaintiff's bills and in their depositions fully, positively and explicitly deny, that any conspiracy or arrangement of any kind to injure or defraud the plaintiff or prevent competition at the sale was entered into between them or either of them, or that they had any conversation on that subject. Fisher denies, that he demanded said announcement for any improper or fraudulent purpose, and avers, that he did so, only because it was his legal right to have his debt so paid. The proof wholly fails to establish any such conspiracy or fraudulent purpose on the part of any of said parties. Nor is it shown, that any person, who intended to purchase and was able to pay for the property was prevented by said announcement from bidding on it. It does appear, that the defendant, Stewart, a creditor of the plaintiff, on the first day bid for the Eighth Avenue property $985.00, and he in his deposition says, that he "was unable to raise the legal tender as demanded, so the property was re-sold on the next day." He does not pretend to state, that he had or could raise that amount of any kind of money. The presumption is he had not the money to meet his bid; for, if he had, the trustee gave him sufficient time to exchange it for legal tender currency before the re-sale. Russell, the president of the Bank of Huntington, proved that there was at that time a small premium on gold, but none on silver or legal tender currency, and that the latter could be gotten in exchange for national bank notes within twenty four hours by simply paying the expressage on the same to and from Cincinnati. I do not

think therefore, that the proof establishes, that there was, in fact any injury done to the appellant by this announcement of the trustee. But, be this as it may, the law did not compel the creditor to take anything but legal tender money for his debt. The contract provided for this and the debtor can not complain if the demand was made in good faith and without any fraudulent purpose.

3. The evidence entirely fails to prove, that the sale was adjourned from the 17th day of December to the 19th and then made on the 18th. The proof is, that the sale commenced on the 17th as it was advertised, and that on that day it was adjourned to the 18th, on which day the sale was completed.

4. The proof also fails to sustains the charge that the sale was made without proper notice or being properly advertised. The trustee testifies positively, that the sale was advertised and posted according to the terms and requirements of the trust-deed in every respect. The appellant, on whom the burden of showing that sale and advertisement were irregular and not such as the deed and the law required, wholly failed to prove either that there was any defect in the notice of sale or the sale itself. This contention is therefore plainly without merit. (*Burke* v. *Adair*, 23 W. Va. 139; *Fulton* v. *Johnson*, 24 Id. 95):

5. Excluding the testimony of the appellant, which is so extravagant as to render it entirely unreliable, the proof shows that the Eighth Avenue property which sold for $950.00, was worth at the time of the sale $1,000.00; and the Third Avenue property, which sold for $2,880.00, was worth in the condition on which it was sold, about $3,000.00. It is well settled, that where the sale is fair and regular in all respects, it will not be set aside for inadequacy of price, unless the inadequacy be so gross as to justify the presumption of fraud. Half the estimated value of the property is not such inadequacy. (*Bradford* v. *McConihay*, 15 W. Va. 732). It is clear, therefore, that these sales can not be set aside for inadequacy of price.

Having fully considered all the questions presented by the record, I can discover no ground for which the decree

of the Circuit Court should be reversed, consequently the same must be affirmed.

AFFIRMED.