# CHARLESTON.

GEORGE, TRUSTEE, *v.* ZINN. *et al.*

Submitted January 12, 1905. Decided January 14, 1905.

57   15
f62  218
f63   49
e63  514

57    15
165   205

57    15
66    230

1. APPEAL.—*Bill Confessed—Errors in Decree.*

   An appeal from a decree upon a bill taken for confessed, after a motion to correct the same, under section 5 of chapter 134 of the Code, specifying certain errors therein and charging generally the existence of others, has been overruled, brings before the appellate court all the errors of law in the decree. (p. 19.)

2. TRUSTEE—*Sale by—When Equity will Entertain Suit by.*

   A trustee in a deed of trust cannot, as a matter of course, resort to a court of equity to have sale made under its decree, instead of selling under the power vested in him by the deed of trust, and, unless he shows such impediment to the exercise of his powers as renders it inequitable for him to proceed without the aid of the court, he will not be entertained. (p. 20.)

3. TRUSTEE—*Liens—Uncertainty of Liens on Trust Property.*

   The existence of prior or subsequent liens, or both, on real estate, which a creditor desires to have sold under a deed of trust, held by him, constitutes no impediment to the execution of the power of sale vested in the trustee, unless it be shown that their is such uncertainty, dispute or controversy, as to the amounts or priorities of some, or all of them, as may deter bidders from offering full and fair prices for the property. (p. 21.)

4. TRUSTEE—*Suits by—When Equity will not Entertain.*

    The possibility of a right of subrogation and marshalling of assets in the trust creditor, desiring such sale, confers upon the trustee no right to the aid of a court of equity in the execution of the power of sale vested in him. (p. 26.)

5. TRUSTEE—*Trustee Governed by Terms of Trust.*

    The rights, powers and duties of a trustee in a deed of trust, executed to secure the payment of a debt, are limited and defined by the instrument under which he acts, and he does not control the debt secured and cannot assert the equities, rights and powers of the *cestui que trust*, respecting it, to any extent beyond the powers expressly conferred upon him by the deed of trust and such incidental and implied powers as are included in the authority so expressly conferred. (pp. 25, 26.)

Appeal from Circuit Court, Randolph County.

Bill by W. T. George against Nannie E. Zinn and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

TALBOTT & HOOVER, for appellants.

W. T. GEORGE, *pro se.*

POFFENBARGER, JUDGE:

In the disposition of this appeal, all the questions which it is necessary to determine may be resolved into the following: "First. When a motion in the trial court to correct errors in a decree upon a bill taken for confessed, made as a preliminary step to the taking of an appeal, from such decree, specifies certain alleged errors therein and contains a general charge of other errors apparent on the face of the record and decree, does it affect errors not specifically pointed out? Second. Does a prior judgment lien, a prior vendors lien, which is alleged, and subsequently shown, to have been satisfied, and subsequent trust deed and judgment liens, constitute an impediment to a fair execution of the powers of a trustee in a deed of trust, executed to secure a debt, authorizing a resort by him to a court of equity for relief? Third. Does a prior judgment lien, covering not only the lot on which the the trust deed is secured, but other real estate, constitute such an impediment?"

W. T. George, as trustee in a certain deed of trust, executed by Nannie E. Zinn and A. W. Zinn, her husband, to

secure, upon a town lot, owned by Mrs. Zinn, a note for $1,-500.00, executed by the grantors to H. A. Monahan, brought this suit in the circuit court of Randolph county, to have the liens on said lot adjudicated as to their amounts and priorities, alleging the lack of such ascertainment to be an impediment to the exercise of the power of sale vested in him by the deed. His bill shows the reservation of a lien for $350.-00 in one of the deeds by which the lot was conveyed to Mrs. Zinn, which it avers has been satisfied, and as to the discharge of which it does not charge the existence of any controversy, dispute or doubt, and a small judgment lien in favor of A. D. Barlow, which is ultimately found to amount to $85.24, both prior to the deed of trust. It then shows a subsequent, unsatisfied deed of trust, executed to W. T. W. Morgan, trustee, securing, on the same lot, the payment of two notes for $522.75, each in favor of Cutright Bros. and two satisfied judgment liens of still later date, and charges that there may be other liens of which the plaintiff is ignorant. Of the interested parties, Nannie E. Zinn, A. W. Zinn, A. D. Barlow, Dora T. Gall, who had held the vendor's lien, and W. T. W. Morgan, trustee, only, were made defendants. Monahan, the creditor in the first deed of trust, and Cutright Bros., creditors in the other, were not made parties at all.

Mrs. Zinn owns another lot, conveyed to her by C. F. Teter and wife by deed, dated August 30, 1898, and reserving a vendor's lien for $750.00 of purchase money. On this the Barlow judgment is a lien and the Cassell judgments had been liens. The bill does not show any other liens upon it, but, from the commissioner's report and the decree, it appears that there were other subsequent liens. On account of the inclusion of this lot in the bill, Charles F. Teter was made an additional party defendant.

Though the bill does not say so, it appears from the commissioner's report and decree and the exhibit filed with the bill, that A. W. Zinn, the husband of Nannie E. Zinn, owned a third lot which has been drawn into the proceedings. From the bill and exhibits, it appears that, on the 18th day of September, 1891, A. W. Zinn and wife, conveyed this lot to I. P. Russell, trustee, to secure the payment of a note for $150.00, executed by A. W. Zinn to A. D. Barlow. On account of this deed of trust on this piece of property, Rus-

sell, as trustee, is made an additional party defendant. Of course the judgment in favor of Barlow against A. W. Zinn and Nannie E. Zinn, dated March 20, 1897, is a lien upon this piece of property as well as upon Mrs. Zinn's, and the Cassell judgments had been liens upon it. The commissioner's report and decree show a number of other subsequent judgment liens upon it, some of which were against A. W. Zinn alone, and some against him and Nannie E. Zinn.

Mrs Zinn made no appearance in the case. There was a reference to a commissioner who reported all the liens and their amounts and priorities. By the decree made and entered on the 4th day of May, 1903, the report was confirmed, the liens fixed upon the property and a sale directed to be made by W. T. George, who was appointed a special commissioner for that purpose, in case of default in payment of the liens.

Pursuant to notice, Nannie E. Zinn, on the 12th day of October, 1903, filed her petition, praying that the decree be set aside and the errors and insufficiencies in the decree and the record be corrected. Thereupon the court suspended the sale until further order, and, on the 21st day of October, 1903, sustained a demurrer to her petition, dismissed the same and refused to set aside the decree or correct any errors therein.

The first error specifically assigned was failure to make C. H. Scott, trustee. W. C. Ward, B. L. Butcher, trustee, A. G. Dayton, trustee, Jennie Zinn and J. C. Arbogast, parties. This specification was founded upon testimony taken before the commissioner, showing that there had been certain deeds of trust on some, or all, of the property, which had been satisfied by payment. Whether they were prior or subsequent, or on what particular lots they had existed, does not appear anywhere in the record. The second assignment is based upon the failure to make Cutright Bros. parties, and the third on the failure to make Monahan a party. The fourth was based upon the failure to ascertain, before decree, the rental value of the property, and the fifth asserted that it was error to decree a sale of any of the lands except the lot upon which the plaintiff held his lien. These specifications were followed by a general charge that there were many other errors apparent upon the face of the record and decree.

A motion to correct errors in a decree upon a bill taken for confessed, under section 5, chapter 134, must, from its nature, be as broad and efficacious as an appeal, for it is essentially a substitute for an appeal, since section 6 of the same chapter forbids an appeal for any error which may be corrected on such motion, until after it has been made, and said section 5 provides that, on such motion, the court in which the decree was rendered, or the judge thereof in vacation, may reverse it for any error for which, but for the prohibition in section 6, *an appellate court might reverse it*, and give *such decree as ought to be given*. This makes the power and duty of the court or judge on such motion co-extensive with the powers and duties of the appellate court upon an appeal. Hence, an appeal after the refusal of the court below to correct, upon a petition pointing out certain errors and charging the existence of others, brings up the whole decree, as to all errors of law, as fully as does an appeal in any other case. In such cases no issues of fact are involved, for none have been made. *Camden* v. *Farrel*, 50 W. Va. 119. Here, the petition specifies certain alleged errors and then charges others apparent on the face of the decree and proceedings. How can we assume that none save the errors specifically pointed out were insisted upon in the court below? The defect of want of necessary parties, broad as a demurrer to the bill would have been, striking at the basis of the entire suit, was brought to the attention of the court below and is now relied upon here as the principal assignment of error.

Before entering upon any consideration of this ground of error, it is deemed proper to advert to a more serious defect in the bill which, though not mentioned in the briefs, cannot escape the notice of the court, since it is apparent upon the face of the record, and is a matter of such substance, that, being noticed, it ought not to be passed over in silence. It is well settled that this Court does not limit its investigations to the errors assigned, unless it is apparent that all others have been waived. Rule V, section 3. Nothing appears from which it can be safely inferred that any defense has been waived. On the contrary, the bill, constituting the foundation of the whole structure, is attacked. Since we are called upon to examine it and pass upon its sufficiency, it is to say

the least, not improper to give it full and thorough consideration.

The extent to which a trustee will be permitted to resort to a court of Equity for the removal of impediments to a fair and just execution of his power of sale has never been clearly defined by this Court. It would be more accurate to say that no rule has been established by which to determine what is, and what is not, such an impediment. In *Spencer and Miller* v. *Lee*, 19 W. Va. 179, JUDGE PATTON, speaking of the duties and powers of a trustee, lays down this proposition: "He is supposed to be the common friend and agent of both parties impartial and disinterested, whose duty it is to act justly and discreetly towards those in interest. In order that the trustee may thus act, a court of equity is always open to him, when the amount due by the deed is uncertain or is in good faith disputed, when any cloud rests upon the title, when a reasonable price cannot be obtained, or when for any reason a sale is likely to be accompanied by a sacrifice of the property, which at the cost of some delay may be obviated." The use of the words, "when for any reason a sale is likely to be accompanied by a sacrifice of the property," does not indicate what particular circumstance would constitute a reason for such sacrifice. Reference to the cases cited in support of the proposition reveals the fact that, in all of them, there was some matter of controversy as to the state of the title, the amount of the debt due or a conflict as to priority or amounts of liens. Not one of them asserts that the mere existence of one or more prior liens upon the property, undisputed in any sense or to any extent whatever, constitutes any obstruction or impediment to the exercise of the power of sale. A cloud upon the title, or a question as to whether some lien upon the property other than the one created by the deed of trust under which the sale is about to be made, is prior or subsequent to the trust deed lien, or a question as to whether or not the apparent prior lien is valid, or has been satisfied, in whole or in part, would create a state of uncertainty as to what the purchaser would obtain for his money, and thereby prevent him from bidding the amount which the property is, in his opinion worth. He, of course, would want a clear title, legal or equitable, without any incumbrances, uncertain in amount. He would want no uncertain-

ty as to the amount of the prior liens, for his purchase would be subject to them. But if there is no uncertainty as to the amount of such liens, and no cloud upon the title, and no controversy as to whether some debt is prior or subsequent to the one for which the sale is being made, there is nothing to deter him from bidding what, in his judgment, the property is worth. He takes it sublect to the prior liens. *Crumlish* v. *Railroad Co.*, 32 W. Va. 244; *Fleming* v. *Holt*, 12 W. Va. 143. They, together with the amount bid by him, constitute the whole cost of the property to him. That the mere existence of prior liens, not shown to be disputed as to their validity or amounts, or as to whether they are in fact prior, do not constitute any impediment to a fair execution of the trust, has been decided by this Court in *Curry* v. *Hill*, 18 W. Va. 370, holding that: "Where the amount of the prior liens is certain and ascertained, the sale of the equity of redemption is proper." In that case, the Court dismissed the bill flled by the debtor himself, predicated upon the theory that a fair sale could not be made because of the existence of prior trust deed liens. There had been no adjudication as to either the amounts or priorities of the liens. The defect of the bill was, that it failed to show that any of them were controverted by anybody in either of these particulars. JUDGE JOHNSON said the amount of the prior lien being certain and ascertained, the sale of the equity of redemption under the last trust would be proper. JUDGE SNYDER so understood the rule, for he so states it in *Lallance* v. *Fisher*, 29 W. Va. 512. His language is: "The facts in this case do not show, that there was any such controversy or uncertainty about the title of the property or the amounts and priorities of the debts, as would have justified the trustees in resorting to a court of equity, much less do they show any right on the part of the debtor to set aside a completed sale made by the trustees." In the preceding paragraph he had discussed the conditions under which a trustee is required to delay sale pending a removal of impedi. ments. In *Schurtz* v. *Johnson*, 28 Grat. 657, the rule is stated as understood and declared in *Curry* v. *Hill*, and *Lallance* v. *Fisher*. In that case there were both prior and subsequent liens, but there was no dispute, and the court held that the trustees had violated no duty in selling without hav-

ing had the liens adjudicated. 〃 It is to be observed that all the references to liens in all the cases are as to the amounts and ⟨priorities thereof, and uncertainty as to amount or priority. Nowhere has it been declared that the mere existence of liens necessitates or justifies a suit in equity.

A comparatively recent case is *Muller's Adm'r* v. *Stone*, 84 Va. 834, which declares a limitation upon the rule to be that there must be some controversy, some dispute, which stands in the way of a just and fair sale. The liens in that case were junior, but that does not alter the rule. The decision rests, not upon the ground that they are junior liens, but upon the ground that it does not appear that there is any uncertainty about them, so as to make it necessary to resort to a court of equity for their ascertainment. Lewis, President, concludes by saying: "But it is not the duty of the trustee in every case to invoke the aid of a court of equity, before making a sale of the trust subject, where there are liens thereon; and to hold that he is or that if he fails to do so an injunction will be awarded at the instance of any party in interest as of course, would be to impose serious delays, involving costs and expense, in the execution of deeds of trust, which the law never contemplated, and without promoting the interests of either creditor or debtor." Proceeding, the learned judge becomes more emphatic and says: "It is only when the aid of a court of equity is necessary that it ought to be applied for; and it is only in such a case that its aid will be extended. If there are no real impediments in the way of a fair execution of the trust, then its aid is not necessary, and the costs of a law suit ought not to be added to the ordinary cost of executing the trust."

This principle is well illustrated in *Hogan* v. *Duke*, 20 Grat. 244, which, however, did not involve any question of liens. The debtor attempted to enjoin the sale upon the ground of uncertainty as to the amount due under the deed of trust, it appearing that he was entitled to two credits of $150.00 each, both of which were conceded and had never been denied by the creditor. He claimed a further credit for some oats, potatoes, lumber and other articles. The answer denied that he was entitled to this last credit, and his bill, as to that point, was unsustained by proof. The court held that he could not maintain the suit on the ground

of uncertainty, but did remove the trustee because he had been declared bankrupt. Judge Moncure, speaking for the court, said: "There was no uncertainty as to the amount of cash payment to be so made. It could be made certain by a simple statement from materials furnished by the decree. Still less was there any uncertainty as to the amount necessary to be paid to prevent any sale at all under the trust deed or under the decree. That amount was the balance due on the trust debt, and expenses already incurred in the part execution of the trust."

It may be asked whether if a purchaser at a sale under a deed of trust buy a piece of property on which there is a prior lien, he may upon paying off that lien, have a right of action on the covenants in the deed of trust, or by way of subrogation, against the debtor, to recover back the money paid out in discharging the prior lien, so that the ultimate price of the property to him is not the amount of his bid plus the prior liens, but the aggregate less whatever sum he may so recover back; and whether this does not introduce an element of uncertainty into the bidding, to the injury of the debtor. It does not, for the obvious reason, that, if any such prospective right of action exist, a question which need not be here determined, it is common to all the bidders, and its value not necessarily difficult of ascertainment. Judgments and other claims, secured and unsecured, are subjects of daily barter and sale. If one bidder may be supposed to make an allowance for such contingent recovery, the supposition holds good as to each of the others. At any rate, the courts have never recognized such possible recovery back as an element of uncertainty, and certainly not as an existing controversy. In *Lallance* v. *Fisher*, quoted above, Judge Snyder says there were two trust deeds prior to that of Fisher under which the sale was made. *Curry* v. *Hill*, and other cases, cited, in which there were prior liens, clearly preclude any ground of equity jurisdiction. Though a prior lien may be, in some sense, a cloud on the title, these cases undoubtedly hold it not to be such a cloud as constitutes an impediment to a fair execution of the power of sale. Nor is it to be classed with an outstanding legal title, hostile to both creditor and debtor, affecting the whole subject of the sale, such as existed in *Rossett* v. *Fisher*, 11 Grat. 492.

Two cases decided by this Court seem to proceed upon a principle contrary to what is here stated, but they do not go so far as to declare that the mere existence of liens gives the right to resort to a court of equity. They are *Keck* v. *Allender*, 37 W. Va. 201, and *Hartman* v. *Evans*, 38 W. Va. 669. In the former, the debtor made no resistance to the bill. Its sufficiency was never tested. The suit started with an acceptance of service of process and an order of reference by consent. The only controversy in the case arose between two creditors, both of whom desired an adjustment of the conflict between their liens. That case, however, would be no exception to the rule, because of this conflict and dispute between the lienholders. *Hartman* v. *Evans*, in its declaration of principles, goes far beyond the case decided and beyond any former decision of this Court or the Virginia court or any other court so far as has been discovered. Point 8 of the syllabus says: "Where there is from any cause, an impediment to his making a fair and proper sale, (1) as where, from the fact of the deed of trust being one of long standing, or from any cause, the amount due and to be raised by a sale is uncertain; (2) where there are various deeds of trust or other incumbrances; (3) where the legal title is outstanding; (4) where there is a cloud upon the title—the trustee may, of his own motion, apply to a court of equity to remove such impediment to a proper execution of the trust; and, if he should fail to do this, the party injured by his default has a right to make such application." In that case the deed of trust under which the sale was sought to be made, was the last one of four, and it recited that it had been given for the amount due upon the three former ones, so that, in fact there was but one debt. The court expressed a doubt as to whether the creditor was bound by this recital, and as to whether or not the legal title might not be outstanding. Hence, the decision does not proceed upon the ground of undisputed incumbrances, and a re-examination of its soundness as regards the sufficiency of its allegations, respecting uncertainty in the debt, and as to the effect of an outstanding legal title, need not be inquired into, though it may be remarked, as to the outstanding legal title in a trustee in a prior deed of trust, as an independent ground of equitable relief in such case, if it was intended to say that it is suffi-

cient, that the case is in direct conflict with the decision in *Curry* v. *Hill*, 18 W. Va. 370. The *obiter dictum* on the subject of incumbrances, immediately precedes a citation of *Horton* v. *Bond*, 28 Grat. 815, and *Cole* v. *McRae*, 6 Rand. 644. Both of these were judgment lien creditors' bills to enforce the liens and set aside fraudulent deeds. Neither of them, in any degree, supports the suggestion ventured.

It is difficult to perceive any reason for allowing a resort to expensive litigation for the accomplishment of that which the parties can do themselves. Courts were instituted to give relief in those instances in. which there are differences, disputes, controversies, to settle. It is contrary to fundamental principles of law, to allow a man to have the aid of a court when his situation is such that he does not need it. The business of courts is to hear and determine controversies, not to make calculations for people or advise them in ordinary business transactions. For the purpose of allowing a useless and expensive proceeding, the law does not presume that, in cases of public sales, men will not ascertain for themselves plain, open and undisputed facts, nor that they do not have the capacity to do so. Neither will it be assumed that they are ignorant of the law, the facts being known, or presumed that men will not recognize each other's legal rights, or that controversies exist or will arise. These things must be made to affirmatively appear.

It may be supposed that, because the prior judgment lien covers two lots owned by Mrs. Zinn and one owned by her husband, this gives equity jurisdiction. It might afford a basis for a bill by Monahan, the creditor. Conditions may be such as to enable him to say to the judgment creditor, "As you have two securities for your debt and I have but one, and that is insufficient to pay both your debt and mine, you shall first resort to the other piece of property." Under some circumstances, a creditor may do this. Without intending to intimate that Monahan may, under the circumstances of this case, do so, it is clear that, if anybody can do do it, in respect to his debt, it must be himself. It affords no ground for a suit at the instance of a trustee. His duties are prescribed and defined by the deed of trust under which he is acting. *Crumlish* v. *Railroad Co.*, 32 W. Va. 244. He is not the general representative of Monahan, as regards

his debt. His duty is only to sell in case of default. His only right to resort to a court of equity, if he has any, is incidental to that power of sale. It can only be done for the purpose of removing impediments to that sale, and if none exist, (and his bill fails to show that any do), then he has no right to bring such suit. He has no right to collect the debt as trustee, except in the event of the sale of the property by him. To hold that the trustee in the deed of trust represents the creditor for all purposes in the collection of the debt, would extend his powers far beyond the limits fixed by the instrument under which he holds, and would have the effect of depriving the creditor of the control of his debt. He could subject him to useless costs, prosecute unsuccessful suits, and compel the creditor to undergo unnecessary delay. That is clearly not the office of such trustee.

The principle or rule which might give right, to this trust creditor or other junior incumbrancer of the lot, on which the trust lien is, to compel the judgment lienor to resort to the other lot, is that which requires the marshalling of funds, securities or assets, founded upon the principle of subrogation. This is never enforced at the instance of the common debtor. Sheldon on Sub. 64; *McDevitt's Appeal*, 7 Pa. St. 373; *Butlet* v. *Steinbach*, 87 N. C. 216; *Plain* v. *Roth*, 107 Ill. 588; *Witherington* v. *Mason*, 86 Ala. 345. It applies only as between creditors of a common debtor. *Plain* v. *Roth* cited; *Lee* v. *Gregory*, 12 Neb. 282. Since the rule does not operate at all in favor of the debtor, how can it be said that the trustee may base a suit upon it for his benefit? As his only duty to the creditor is to sell the property in such manner as not to sacrifice it, he clearly has no right to represent him in the assertion of equities against other creditors. Would a suit, after sale under the deed of trust, to shift the whole, or part, of the Barlow judgment on to the other lot, assuming that conditions are such as to warrant a marshalling of assets, injure or prejudice the purchaser? Not to any extent whatever. The lot is bound for the entire judgment. The judgment creditor may enforce it against either lot, unless prevented from doing so by some other creditor, asserting against him the two fund rule, and, if no such claim is set up before he obtains satisfaction, it cannot

be asserted against the land at all, but may go against the fund, collected by the judgment creditor. Sheldon on Sub. sections, 62, 66. Clearly the purchaser· takes the land subject to the entire amount of the judgment, and the only open question is whether he shall ultimately pay all of it or any of it to the prior creditor, or to other creditors who may marshall the assets against the former. As to the amount of that judgment, the purchaser becomes a stakeholder. He must know he is liable to somebody for the whole of it, and he is presumed to be governed by that in his bidding. Therefore, it creates no uncertainty as to what the purchaser must pay or as to what he buys, and cannot work any sacrifice of the property.

If the power of sale can, in view of our statutory regulations, be treated as a cumulative remedy, so as not to deprive the creditor of his suit to enforce the lien of his trust deed, this gives the trustee no right to prosecute such suit, for the terms of the deed, conferring his authority, do not go that far.

The bill in this case sets up no question about the amount of any lien, prior or subsequent, nor any about the order in which they, or any of them, are to be satisfied. As to those which are alleged to have been paid off, it is not shown that the fact is denied, or that the trustee or anybody else has made any inquiry about them. Such an inquiry would involve less time and expense than a judicial investigation of matters which, in no sense of the terms, call· for judicial determination. The paragraph of the bill, which, it is supposed, was intended to show how the trustee is hampered and obstructed reads as follows:

"Plaintiff further says that owing to all of the aforesaid judgments appearing of record, and the aforesaid deeds of trust, that it is impossible for him to proceed in the enforcement of the trust for the collection of the debt due to said Monahan, by advertising and selling· the property as provided for in said deed of trust, and therefore he avers that he has a right to·file a bill in equity for the purpose of having the Court to ascertain what portion of the aforesaid debts have been paid, and what amount thereof remains unpaid, in order that the property when sold may sell more readily and to better advantage for the creditors."

Though the deed of trust empowers the trustee to sell, only upon the request of the creditor, the bill does not aver that any such request has been made. If the creditor were a party, this defect might be cured by his acquiesence in the proceedings, but he is not a formal party and it does not affirmatively appear that he ever presented any claim to the commissioner. Whether that officer ascertained and reported the debt from the bill and exhibits alone, or from them and a claim presented by Monahan, cannot be determined from the record. If there were a presumption that he did, it might be overcome by the fact that the debt is decreed to W. T. George, trustee, and not to Monahan. See *Bryan* v. *McCann*, 47 S. E. 143.

The general rule in equity is that all persons interested in the subject matter of a controversy are necessary parties. For the appellee here, the application of this rule to the case in hand is virtually admitted, but it is insisted that the defect has been cured by the appearances of all the interested parties before the commissioner, since his report ascertains and presents their claims. Whether this position is sound need not be determined, because, for defects in the bill, the whole structure of the suit falls, and we will not assume that necessary parties will be omitted from any future proper proceeding.

The bill, in its present form, being wholly devoid of equity, the decree must be reversed, and the cause remanded, with leave to the plaintiff to amend, or have his bill dismissed without prejudice, as he may elect.

*Reversed.*