# CHARLESTON

MANKIN *et als.* v. DICKINSON, ADM'R ETC. *et als.*

Submitted March 16, 1915.   Decided April 6, 1915.

1. JUDGES—*Special Judge—Selection by Agreement—Validity.*
   An agreement made pursuant to section 11, chapter 112, serial section 4558, Code 1913, selecting a special judge to try a cause, purporting to be signed by counsel for all the parties, is not void because not signed by a guardian ad litem for infant defendants. (p. 129).

2. EQUITY—*Pleading—Original Bill—Designation as Cross-Bill.*
   Though a bill be styled a cross-bill, it will be treated for what it really is, and if it contains proper matter calling for the relief prayed for it will be treated as an original bill.  (p. 130).

3. MORTGAGES—*Deed as Security—What Constitutes.*
   The general rule is that though land be conveyed by debtor to creditor by deed absolute, to secure the repayment of a loan, but with a collateral contract for the repurchase and reconveyance of the property, the deed and contract will be treated as a mortgage and not an absolute conveyance. But the deed and contract involved in this case, considered in connection with the objects and purposes of the parties, as disclosed by the record, and their subsequent transactions and dealings relating to the property, did not constitute a mortgage.  (p. 130).

4. SAME—*Sale by Trustee—Injunction.*
   Where there is no real impediment in the way of the trustee in the execution of a deed of trust, and the amount of the debt

secured is certain, there is no necessity for the trustee to resort to a suit to remove impediments, or to have the debt adjudicated. To such cases the rules applicable to creditors' suits and the like have no application. Nor will a sale by the trustee in such case be enjoined at the suit of the debtor to await the litigation of unrelated controversies between some of the parties. (p. 136).

(POFFENBARGER, JUDGE, dissenting.)
(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Fayette County.

Suit by Cal Mankin and others against R. H. Dickinson, administrator, and others. From decree for plaintiffs, defendants Bessie Woods and others appeal.

*Affirmed.*

*Miller & Bobbitt* and *D. W. Taylor,* for appellants.

*R. T. Hubbard, Jr.,* for appellees.

MILLER, JUDGE:

The bill, styled a cross-bill, was filed by Bessie Woods, a defendant in the original suit, after final decree therein fulfilling all the purposes of the original bill, but which decree provided that nothing therein should "in any way prejudice the defendants, Lutie O. Woods, Bessie Woods and Sam C. Woods, or either of them as to any rights they or either of them may have to recover against the defendant, Cal Mankin, with reference to any controversy that may exist between said last mentioned parties in this cause."

The joint answer of these and other defendants to the original bill alleged a series of transactions between the plaintiff Mankin and themselves and others, out of which it was conceived certain rights and equities between them remained to be adjusted, but they were not pertinent to the issues presented by the original bill, as the court evidently concluded, and there was no prayer for relief against Mankin based thereon. Wherefore the saving in their favor in said decree.

From the decree dismissing the so called cross-bill, and denying plaintiff any relief thereon, she has appealed.

The first point made is that there was error in the selection of a special judge to try the case. The selection was by

agreement purporting to be signed by counsel for all the parties pursuant to section 11, chapter 112, serial section 4558, Code 1913. Appellant does not claim that the agreement was not properly signed on her behalf, but contends that it is void because it does not appear to be signed by the guardian ad litem for some of the infant defendants, heirs of J. D. Woods, plaintiff's father. While it is true, as held in *Myers v. Myers,* 6 W. Va. 369, that an infant defendant can only appear and defend by guardian ad litem, we do not think that rule should be carried to the extent of denying counsel to a guardian ad litem. The contract is signed by counsel, not only for the adult heirs of J. D. Woods, including plaintiff, but also for all the other heirs of said Woods. The guardian ad litem did appear and defend by answer in proper person, and the requirements of the case referred to were thereby fully met. It is not pretended that any interests of the infants were affected by the supposed error, and appellant and her counsel were responsible for the signing of the contract on behalf of the infants. We do not think this point has any substantial merit, and it must be overruled. That a guardian ad litem may have counsel seems well settled. 22 Cyc. 665; *Owens* v. *Gunther,* (Ark.) 5 Am. & Eng. Anno. Cas. 130, and note.

In support of the decree it is interposed by counsel for Mankin that a cross-bill cannot be filed after final decree and the end of the term, and considerable argument was submitted orally and in the briefs of counsel on this point. We deem the point inconsequential. As many times decided, no matter what the pleading may call itself it will be treated in equity for what it really is, and if the court may rightfully do so it will be treated as an original bill. *Martin* v. *Smith,* 25 W. Va. 579; *Pethtel* v. *McCullough,* 49 W. Va. 520; *Silman* v. *Stump,* 47 W. Va. 641; *Jones* v. *Crim & Peck,* 66 W. Va. 301, 303; *McLanahan* v. *Mills,* 73 W. Va. 246.

The first ground alleged for relief against Mankin is, that the deed made by plaintiff and J. D. Woods and Lutie O. Woods, her father and mother, to Mankin, March 25, 1907, whereby, in consideration of one dollar cash in hand paid, the grantors conveyed to Mankin a certain house and lot in the town of Oak Hill, Fayette County, and the contract executed

between Mankin and wife and Bessie Woods contemporaneously with the making and delivery of said deed, and whereby Mankin and wife, in consideration of one dollar in hand paid, thereby gave and granted to Bessie Woods the exclusive right to repurchase said property, in consideration of fourteen hundred dollars, and the actual costs of any additional improvements, said amount to be paid cash in hand, the contract to be void after twelve months from date, and whereby on so electing and complying with the terms of the contract, Mankin and wife covenanted and agreed to make and deliver to her a deed of general warranty for said lot, constituted together a mortgage by Bessie Woods and others to Mankin, and not an absolute deed of conveyance, for the purpose of securing repayment to him of certain debts and liens existing against the property, estimated at nine hundred dollars, and five hundred dollars represented by the note of Mankin to Bessie Woods executed on the same day.

The general proposition contended for by counsel is supported by the numerous decisions cited, that where land is conveyed by debtor to creditor, to secure the repayment of a loan of money, and the borrower makes a deed absolute to the lender, but with a collateral contract or agreement for the repurchase of the property, the transaction constitutes a mortgage, and not an absolute sale. *Davis* v. *Demming,* 12 W. Va. 246; *Thacker* v. *Morris,* 52 W. Va. 221; *Sadler* v. *Taylor,* 49 W. Va. 104; *Lawrence* v. *Du Bois,* 16 W. Va. 443; *Hoffman* v. *Ryan,* 21 W. Va. 416; *Kyger* v. *Depue,* 6 W. Va. 288; *Klinck* v. *Price,* 4 W. Va. 4; *Hursey* v. *Hursey,* 56 W. Va. 148; *Liskey* v. *Snyder,* 56 W. Va. 610.

But do the pleadings and proofs bring this case within the 'rule of those decisions? According to pleadings and proofs, the agreement, not evidenced by any writing between the parties, was that Bessie Woods, in whom the legal title was invested, should sell and convey the property to Mankin, and assign to him a certain collateral contract relating to one of the liens thereon, and that in consideration thereof Mankin should assume and pay the debts and liens against the property, estimated by both parties, after examining the records, to be about nine hundred dollars, and in addition pay the five hundred dollars; and should also execute an option con-

tract to reconvey the property to Bessie Woods within twelve months in consideration of fourteen hundred dollars to be paid him in cash. The contract so executed between the parties was not one for a loan of money. The proposition to Mankin was to sell him the property outright, not to borrow money. Evidently he was attracted to the proposition because of the opportunity presented to make a profit. The collateral contract assigned Mankin was one between J. D. Woods and certain of the other heirs of S. B. Woods, his father, whereby the latter in consideration of the agreement of the former to keep his mother, agreed to release to him their interest in a deed of trust debt on the property in favor of their father, the late Samuel B. Woods, and to procure all the other heirs to also release their interests, and thereby relieve the property of that lien, which at the time Mankin purchased it, still existed, and was one of the debts and liens which with the aid of said collateral contract Mankin was to pay off and release.

That these papers were not intended by the parties to constitute a mortgage is established beyond controversy by the subsequent transactions between them. It is alleged and proven that within four months after the date thereof Bessie Woods elected to repurchase the property, and did so, and that in compliance with the terms of the option contract, Mankin and wife, as directed by her, executed and delivered to Sam C. Woods, her brother, a deed of general warranty for the property, in consideration of fourteen hundred dollars, cash in hand paid, by surrender, through the bank where the deed was deposited by Mankin, of Mankin's note for five hundred dollars and payment to him of nine hundred dollars in money. Mankin's deed exhibited with the bill bears date July 16, 1907.

Moreover, it is further shown that at the time of the transactions just referred to, and as a means of raising the money to repurchase the property from Mankin, Bessie Woods and her brother and mother borrowed from one Blake the nine hundred dollars to make the cash payment to Mankin, and secured Blake by a deed of trust on the same property. With this transaction Mankin had nothing to do. By the making and delivery of his deed to Sam C. Woods, as stated, and

accepting the cash payment and surrender of his note, Mankin became wholly disconnected from the property, except that it appears he had not fully performed his contract to pay off and procure a release of the old trust debt in favor of the heirs of Samuel B. Woods, and of which we will speak later.

But as the bill alleges and the proof shows, when the money borrowed from Blake fell due and was not paid and he was about to sell the property under his deed of trust, these same people, the Woods heirs, applied to the Merchants & Miners Bank, of Oak Hill, for another loan of nine hundred dollars, which was declined, and then it was that they procured Mankin for their accommodation to endorse a note for that amount, and gave a new trust deed to secure him as endorser, both note and deed of trust then being accepted by the bank as security for the new loan. With the money thus raised these people paid off the Blake debt, and it is alleged and proven that Mankin's connection with this transaction was that of an accommodation endorser only. The oral agreement at the time of the loan was that payments were to be made on the note at the rate of twenty-five dollars per month, or seventy-five dollars per quarter, but only the first quarterly payment was made, when the note was reduced and renewed at ninety days for eight hundred and twenty-five dollars, endorsed by Mankin, and thereafter nothing more was paid by the makers, and the note was protested.

Mankin then being called upon by the bank to take up the note, in July, 1909, together with the bank and Lee, trustee, presented their original bill to which the present so called cross-bill was filed, alleging many of the facts above recited, the main object of which bill being to enjoin the sale of the property by A. H. Huddleston, trustee, in the deed of trust of January 22, 1894, securing the payment to the late S. B. Woods, of the sum of four hundred and seventy-six dollars, and to obtain a settlement of the balance due thereon, and to enforce specific performance of the collateral contract, assigned to Mankin, and with which bill Mankin tendered payment to the amount that might be found due therein to the S. B. Woods heirs, who had not executed said contract, and to obtain a decree for the same amount against those who had signed it.

That bill was answered by some of the defendants, including Bessie Woods, and on final hearing, on pleadings and proofs, it was adjudged that the estate of J. D. Woods, then deceased, was indebted to the administrator of the estate of Samuel B. Woods, in the sum of one hundred and ninety-three dollars, which the decree recites was paid by Mankin to Dickinson, administrator for Samuel B. Woods, and Mankin was thereby given a decree over against those heirs who had signed said contract for the same amount, and the preliminary injunction against Huddleston, trustee, was thereby perpetuated, and the administrator of the estate of Samuel B. Woods was required to and did execute a release of said deed of trust on the property covered thereby.

So it appears that it was not until this suit was thus begun and concluded that Mankin had fully complied with his oral agreement with Bessie Woods and others, to pay off and discharge the debts and liens against said property, although prior to that time he had executed said option contract with Bessie Woods, by reconveying the property to her brother, and had accepted from her full payment therefor. In his testimony he gives as his reason for not having paid and settled this lien sooner that he had thought for a while that he could get along without a lawsuit with the Samuel B. Woods heirs, and without litigation obtain specific execution of their contract to release and obtain release of said deed of trust; and that he had allowed the matter to linger along in that way hoping to get the matter settled without suit.

As a result of this suit plaintiffs succeeded in clearing away all prior liens on the property, leaving the deed of trust to Lee, trustee, in favor of Mankin, endorser, as the first and only lien thereon; and then it was that on the demand of the creditors, Mankin and the bank, that Lee, trustee, advertised the property for sale to satisfy the note endorsed by Mankin, and appointed the 22nd day of July, 1911, as the day of sale.

On July 20th, two days before the day appointed for this sale, the appellant, Bessie Woods, instituted the present suit upon her so called cross-bill, making the process to answer returnable on the first Monday in August following, and although this bill was apparently sworn to on July 18, 1911,

the record shows that it was not filed until August rules following, and it is claimed that the defendants Lee, trustee, and Mankin, had no notice of the objects and purposes of said bill.

This so called cross-bill alleges many of the facts and exhibits most of the deeds and contracts already referred to; sets forth plaintiff's theory of the purposes and proper construction thereof. She alleges among other things that the deed made to her, and by her, or at her direction by Mankin and wife to her brother Sam C. Woods, were without consideration passing from either of them, and were held by them respectively in trust for the widow and heirs of her father J. D. Woods, and the relief prayed for was that the said Sam C. Woods might be decreed to be holding the title thereto in trust as aforesaid, that the money received by the said Mankin be declared a trust fund in his hands for the same persons, and that Mankin and Lee, trustee, be enjoined and restrained from selling the property under the trust deed from Sam C. Woods to Lee, trustee, that said deed be declared null and void, and that Mankin be required to account for all moneys received by him, and for a reference of the cause to a commissioner for that purpose, and that any balance that might be found due from Mankin might be credited on the note executed by her brother Sam C. Woods to Mankin, and endorsed by him for their accommodation to the bank, and for general relief.

As already intimated, we hold, as the court below held, that the transactions with Mankin did not constitute a mortgage or render him trustee for the widow and heirs of J. D. Woods, and that appellant was not entitled to the relief prayed for on those theories of her bill. Every fact in the record evidenced by deed or contract in writing, and the conduct of the parties, repel all these theories of the transactions between the parties. That the original contract with Mankin may have been a good one for him, and a bad one for the other parties thereto finds some color in the facts proven, but that the contract was as Mankin contends we can have no doubt from the record. It is quite evident that both parties to the contract estimated the debts which he would have to pay at about nine hundred dollars, and if he had had to pay the full amount

estimated the transactions would have offered him no profit. But as he was assigned the collateral contract with some of the heirs of Samuel B. Woods, and if without too much expense incurred in enforcing that contract he should succeed in doing so, a profit of two or three hundred dollars seemed in sight for him. It is now questionable, however, whether from all the transactions he will not sustain an actual loss. But this is neither here nor there, except as pertaining to the morals of the transactions, which are not controlling, at least in this particular case.

But one other point remains deserving consideration, that is, that the court erred, not shown by the pleadings, but on the facts appearing in the evidence, in not setting aside the sale of the property by Lee, trustee, on July 22, 1911, after the institution of plaintiff's suit. As already stated, process issued on the bill July 20, 1911; the sale, as previously advertised, took place on July 22, 1911, but the bill was not filed until the August rules, 1911. And it is claimed that neither Mankin nor the trustee knew of the objects and purposes of the bill until long after the day of sale. Mankin is shown by the evidence to have been the purchaser of the property at the price of nine hundred and fifty dollars; that he took up and paid off the note, paid the expenses of sale, and that the total cost of the property to him was about ten hundred and sixty-seven dollars. Though as stated the prayer of the bill was for an injunction restraining the trustee from selling, and though plaintiff knew that the sale was to take place on the day named, no injunction was ever applied for, and the trustee proceeded with and completed the sale and executed a deed to Mankin for the property.

On this showing appellant invokes the rules applicable to suits by lien creditors, and when the title to the property is outstanding in trustees; and to suits by trustees in deeds of trust rendered necessary by existing impediments in the way of a proper execution of the trust by them, for the purpose of removing such impediments; and to cases where there is uncertainty in the amount of the debt, or there is usury entering into the debt secured, or clouds upon the title and the like. Of such are our cases of *Hartman* v. *Evans,* 38 W. Va. 669; *Parsons* v. *Snider,* 42 W. Va. 520; *Marlin* v. *Kester,*

49 W. Va. 647, and *Stafford* v. *Jones,* 65 W. Va. 567, and other cases unnecessary to cite.

This suit by appellant is not a creditors' suit, nor is it alleged that there is any prior lien or impediment in the way of the proper execution of the trust by Lee, trustee. The only allegation in the bill relied on in support of this contention is that the money originally received by Mankin was trust money, and that Mankin, being endorser on the note secured in the deed of trust to Lee, should be compelled to pay any balance that might be found due from him on the alleged trust account, to the reduction of said note. But we have concluded there was no foundation in fact for any such relief. The bill makes no offer to pay the note due the bank. and which constituted a lien upon the property. And the bank could not be held up by the plaintiff to enable her to litigate her alleged rights as against Mankin. And in so far as there existed at any time any impediment in the execution of the deed of trust to Lee, trustee, that impediment had been wholly removed by the final decree pronounced on the original bill of Mankin and Lee, trustee, and the bank, and the trustee had thereby discharged any duty devolving upon him, and there is no allegation in the bill that there ever existed at any time thereafter any lien, encumbrance or cloud on the property to interfere with the proper execution of the deed of trust by Lee, trustee. So we think that under our decisions there is no case presented calling for the interposition of a court of equity, or justifying the court in interfering with the trustee, and that unrelated matters may be litigated between the parties thereto.

The case of *Lallance* v. *Fisher,* 29 W. Va. 512, in some of its features, is much like the case presented here. In that case there was a bill of injunction to restrain a trustee from selling trust property, real estate, which was heard, the injunction dissolved and the bill dismissed. The property was then sold by the trustee and a deed made to the purchaser, after which the decree dismissing the bill was set aside and the purchaser at the trust sale and others were brought in as defendants. The amended bill filed sought to set aside the sale made by the trustee on the ground that the same was improperly made by reason of the facts disclosed in the bill,

and that the reversal of the order dismissing the suit vacated the sale, and upon other grounds pertaining to specific facts which the plaintiff failed to show. The court below dismissed the bill, and this court on appeal decided that there was no error. In *George, trustee* v. *Zinn,* 57 W. Va. 15, 24, opinion by Judge POFFENBARGER, it was held, declining to carry the doctrine of *Keck* v. *Allender,* 37 W. Va. 201, and *Hartman* v. *Evans, supra,* to the extent of requiring a trustee, where there is really no impediment in the way of the proper execution of the trust, to resort to equity to remove supposed impediments, point 2 of the syllabus, that: ''A trustee in a deed of trust cannot, as a matter of course, resort to a court of equity to have sale made under its decree, instead of selling under the power vested in him by the deed of trust, and, unless he shows such impediment to the exercise of his powers as renders it inequitable for him to proceed without the aid of the court, he will not be entertained.'' It does not appear from anything alleged or proven in this case that the sale of the property or the price obtained was in any way affected by the suit of the appellant. There is no evidence that a greater price could have been obtained at a public sale of the property. As was said in *Lallance* v. *Fisher, supra,* point 5 of the syllabus: ''Such sale will not be set aside for inadequacy of price alone, unless the inadequacy is so gross as to justify the presumption of fraud. A sale for one half the estimated value is not such inadequacy.'' We are, therefore, unable to see error in the decree calling for reversal.

It is greatly to be regretted if plaintiff and her co-heirs have lost their home. But the record discloses the fact that they have made little progress to save it, during the twenty years or more covered by the transactions referred to in the record. Their efforts have been mainly directed to putting off the day of payment. We would be glad to see a way out for them, but limited as we are by legal rules and principles governing us and controlling the affairs of men, we do not see how we can properly disturb the decree.

We are, therefore, of opinion to affirm the decree below, with costs to the appellees incurred here and in the court below on appellant's bill.

*Affirmed.*