# CHARLESTON.

### HARTMAN *et al.* v. EVANS *et al.*

Submitted June 19, 1893.—Decided December 2, 1893.

1. EXCEPTIONS—PRACTICE.

When a plaintiff in equity files exceptions to an answer, the exceptions should be noted as filed, and at once be set down for argument.

2. EXCEPTIONS—REVERSAL OF DECREE.

If the exceptions to the answer are not well founded, it is not ground to reverse a decree that they were not set down to be argued, but the cause was heard and decided without passing upon them.

3. EXCEPTIONS.

When a replication to the answer is entered or filed, the exceptions to the answer are treated as abandoned, and the answer deemed sufficient as to any discovery prayed for."

| | |
|---|---|
| 38 | 669 |
| 43 | 353 |
| 43 | 714 |
| 38 | 669 |
| 45 | 564 |
| 38 | 669 |
| 47 | 507 |
| 38 | 669 |
| 48 | 465 |
| 48 | 579 |
| 49 | 148 |
| 49 | 170 |
| 49 | 661 |
| 38 | 669 |
| 53 | 380 |
| 38 | 669 |
| 54 | 594 |
| 38 | 669 |
| 55 | 378 |
| 38 | 669 |
| e57 | 24 |
| 57 | 444 |
| 38 | 669 |
| 61 | 594 |
| 38 | 669 |
| f62 | 456 |
| f62 | 514 |
| 38 | 669 |
| 64 | 567 |

4. USURY—EVIDENCE.

Evidence of lending, at a usurious rate of interest, to other persons, is not competent to prove a usurious rate in the case on trial.

5. COMMISSIONERS IN CHANCERY—PRESUMPTION.

Every presumption is made in favor of the correctness of the decision of the commissioner in chancery. If the testimony is conflicting, the court rarely interferes with his finding on the facts, provided he makes no error of law affecting the result.

6. USURY—DISCOVERY—DEED OF TRUST—INJUNCTION—SALE.

Any borrower of money may exhibit his bill in equity against the lender, and compel a discovery on oath of the money really lent, and the interest or consideration of the same; and, if a deed of trust has been made to secure the payment of the debt, an injunction may be awarded to prevent a sale thereunder during the pendency of the suit.

7. TRUSTS AND TRUSTEES.

It is the duty of the trustee to look to the rights and interests of the trust-debtor, as well as to those of the trust-creditor, inasmuch as he is the agent of both parties, and bound to act impartially, between them.

8. TRUSTS AND TRUSTEES—SALE.

Where there is, from any cause, an impediment to his making a fair and proper sale, (1) as where, from the fact of the deed of trust being one of long standing, or from any cause, the amount due and to be raised by a sale is uncertain; (2) where there are various deeds of trust or other incumbrances; (3) where the legal title is outstanding; (4) where there is a cloud upon the title—the trustee may, of his own motion, apply to a court of equity to remove such impediment to a proper execution of the trust; and, if he should fail to do this, the party injured by his default has a right to make such application.

9. TRUSTS AND TRUSTEES.

When the court has for any purpose properly taken jurisdiction of such case, it should proceed to have the trusts executed under its direction, and with its sanction, when the interests and rights of any party manifestly require it.

KECK, SON & FAST, for appellants.

A. B. FLEMING and C. B. DILLE, for appellees cited 2 Min. Inst. 292; Tyl. Us. 298; 4 Gratt. 55; 2 Gratt. 372, 385.

HOLT, JUDGE:

This is an injunction brought by the Hartmans in the Circuit Court of Monongalia against Evans and others, ex-

ecutors of James Evans, deceased, to enjoin a sale under a deed of trust on lands to secure a debt to the testator. The executors of John Evans answered the bill, and plaintiffs excepted to the answer. Various depositions were taken on behalf of plaintiffs, and defendants excepted to them as incompetent. On the 24th day of February, 1891, the cause came on to be heard. The court, not passing upon the exceptions to defendants' answer sustained defendants' exceptions to certain depositions of plaintiffs, and referred the cause to Commissioner Lazzell, to ascertain and report (1) the usury, if any, and amount in the trust-debts; (2) how much, if anything, remained due on the trust-debts. Additional testimony was taken by both plaintiffs and defendants, and, the cause coming on to be finally heard on April 12, 1892, upon the papers formerly read, orders, decrees made, report of Commissioner Lazzell and exceptions thereto, the court decreed that the injunction awarded on May 18, 1890, be dissolved, and that plaintiffs' bill be dismissed, not passing directly on exceptions to answer or report; and the plaintiffs appealed.

Plaintiffs assign numerous errors, which may be conveniently examined under these four heads : First, in allowing the answer to be filed, and not sustaining the exceptions thereto ; second, in sustaining defendants' exceptions to certain depositions of plaintiffs; third, in not passing directly on the exceptions to the report of Commissioner Lazzell; fourth, for various errors in dismissing finally plaintiffs' bill (and under this head the briefs are in the main taken up with the discussion of facts as to the question of usury and questions of chancery practice).

Our practice, starting with that of the High Court of Chancery of England, has been modified by various statutes, beginning with the act of 1748, until it reached its present state in the Code of 1868, giving us an inexpensive, expeditious and simple mode of procedure, which needs but two slight changes to put it almost even with the most advanced Codes of Procedure, viz. shorten or abolish the rule days, and extend the power of the chancellor to take oral testimony at the hearing. Our statutes on the subject extend through a period of one hundred and

fifty years. See Acts Oct., 1748, 6 Hen. St. at Large, p. 207 ; Act Nov., 1753, *Id.* (Ed. 1794) p. 345, § 38 ; Revisal of 1819 (1st Ed.) pp. 196–215 (Act Dec. 21, 1818); Revisor's Rep. of Code 1849, p. 843 ; Code 1849 (Ed. 1860) c. 171, p. 709 (Acts W. Va. 1863, c. 73) ; Code W. Va. 1868 (Ed. 1891) c. 125, p. 800.

Our present law on exceptions to answers is as follows : "When a plaintiff in equity files exceptions to an answer the exceptions shall at once be set down for argument." "When exceptions to an answer have been sustained if the defendant put in a second answer which is adjudged insufficient he shall be examined on interrogatories and committed until he answers them." Code 1891, ss. 54, 55, c. 125. See Act Nov., 1753 (1 Code 1819, p. 214).

If the plaintiffs intended to insist on their exceptions, they should by an order for that purpose have had them set down for argument, or have brought them to the attention of the court, and had them disposed of as preliminary to any hearing of the cause. Where this is not done, or a general replication to the answer is entered, the exceptions to the answers are treated as abandoned, and the answer deemed sufficient as to any discovery prayed for. Story, Eq. Pl. § 877 ; citing Coop. Eq. Pl. 328. See *Hughes* v. *Blake*, 6 Wheat. 453 ; *Clark* v. *Tinsley*, 4 Rand. (Va.) 250 ; *Richardson* v. *Donehoo*, 16 W. Va. 685 ; *Rogers* v. *Verlander*, 30 W. Va. 619–637 (5 S. E. Rep. 847); *Burlew* v. *Quarrier*, 16 W. Va. 108 ; *Coleman* v. *Lyne*, 4 Rand. (Va.) 454–457. The exception to the answer should be noted as filed. 1 Daniell, Ch. Pr. 763–775. The effect of entering a replication is to admit the sufficiency of the defendant's answer, and to exclude all exceptions thereto. 1 Bart. Ch. Pr. 417.

Although there appears no order in the record noting the filing of the general replication, yet it is recited in the order of reference as one of the pleadings, on which the cause is heard, and that is sufficient ; and, if the exceptions to the answer are not well founded, it is not ground to reverse a decree that they were not set down to be argued, but the case was heard and decided without passing upon them. *Goddin* v. *Vaughn*, 14 Gratt. 102.

2. Sustaining defendants' exceptions to sundry deposi-

tions taken on behalf of plaintiffs. Under section 23, c. 130, Code, the court correctly sustained the exception taken to the depositions of plaintiffs, so far as they were examined as witnesses on their own behalf in regard to personal transactions and communications between them and James Evans, deceased, against the defendant as his executors. The other exception related to the deposition of four witnesses who testified that they had borrowed money of James Evans, deceased, at the rate of eight *per cent.*

On the part of plaintiffs it is contended that such evidence tended to show that it was the general habit of the testator to lend money at that rate of interest, and that proof of such habit would be competent as tending to show a lending at such rate in this instance. I think the court was right in excluding this testimony as immaterial. It does not belong to that class of facts which are proved by the concurrence of desire and opportunity to commit them. It is not such evidence as the law requires in cases of usury. It does not even establish habit. The general rule is that, when the issue is whether the party did a particular thing, it is not admissible to put in evidence that he did a similar thing at some other time; and nothing appears to with-. draw this case from the operation of the rule. On the contrary, it is within the reason of the rule; it would be trying an irrelevant side issue, with the trial prolonged, and the real issue overridden and obscured.

3. That the court, by its final decree of April 12, 1892, simply dissolved the injunction, and dismissed plaintiffs' bill without passing upon plaintiffs' exceptions thereto, or defendants' exceptions, or upon the report itself, making no allusion to it whatever, except that it was a paper read at the hearing, although made and returned in obedience to the order of reference of the court of February 24, 1891. Ten witnesses gave their depositions, all called for plaintiffs except one. No evidence was taken before the commissioner. Defendants claimed that there was due their testator from the plaintiffs the sum of three thousand and five hundred dollars, with interest from the 1st day of January, 1885, subject to a credit of two hundred dollars as of January 13, 1890, and that it did not include any usurious inter-

est. Plaintiffs claimed that it was usurious, and that there were credits not given, and that the correct balance, after purging it of usurious interest and giving them credits, left the correct balance of three thousand three hundred and ninety six dollars and fifty nine cents, as of 1st January, 1890.

The commissioner, among other things, says in his report as follows : "Owing to the nature and amount of evidence before your commissioner, he has had considerable difficulty in ascertaining the facts sought by this decree of reference; but he has carefully and thoroughly examined all the evidence before him, and, from all the evidence in the case, it is the opinion of your commissioner that the plaintiffs paid to James Evans usurious interest at the rate of eight *per cent.*, in advance, for the years up to November 10, 1880." * * · "It seems to me that after taking into consideration the allegations of the bill, the answer, the nature of the indorsements, and especially the order of Joseph Hartman to James Snyder, which was paid by George Johnson to James Evans, no other conclusion can be arrived at than the one I have arrived at, namely, that usury was charged by said Evans, and paid by plaintiffs, Joseph and Elliott Hartman ;" and he gives as the true amount due from plaintiffs on the deed of trust to defendants, the executors of James Evans, four thousand three hundred and twenty two dollars and thirty five cents, as of May, 13, 1891. He however, makes other statements to meet "all the other views of the case." One is, four thousand eight hundred and thirty seven dollars, credit January 13, 1890, by two hundred dollars, admitted in the answer to have been paid, leaves, on May 13, 1891, four thousand six hundred and thirty seven dollars; another, four thousand seven hundred and sixty six dollars and seventy cents ; another is, four thousand four hundred and seventy nine dollars and seventy seven cents.

A short history of these transactions is as follows : On the 1st day of November, 1876, plaintiffs borrowed of Col. James Evans one thousand dollars, gave him their single bill of that date, due, with interest payable annually, in five years; and to secure the payment thereof they exe-

cuted a deed of trust to defendant Marshall M. Dent, trustee, on two tracts of land—one containing sixty nine and three fourth acres; the other eighty three and one half acres —duly acknowledged and admitted to record on January 1, 1885. They gave decedent a negotiable note for sixty one dollars and sixty five cents, due in six months, with interest, for a balance of interest on the deed of trust. On November 5, 1877, they borrowed of Col. Evans the further sum of one thousand dollars, gave their note of that date, with interest payable annually, and due in five years, and, to secure this, executed a deed of trust of same date, whereby they granted to defendant Oliver H. Dille, trustee, the same two tracts of land, and two additional tracts—one of thirty three acres and two poles ; the other of thirteen acres. This also was duly acknowledged and admitted to record. On 1st November, 1881, they obtained a further loan—this time of one thousand and one hundred dollars— and they executed to Col. Evans their single bill for the amount, dated November, 1881, bearing interest from November 1, 1881, payable November 1, 1882, with interest, and, to secure it, executed to Joseph Moreland, Esq., trustee, a deed of trust on the same four tracts of land. This was duly admitted to record. On the 1st day of January, 1885, the balance on these three deeds of trust was calculated, and found to be three thousand and five hundred dollars, for which they executed to Col. Evans their bond of that date, payable on or before 1st January, 1886, and, to secure the payment, conveyed the same four tracts of land to defendant Clarence B. Dille, trustee, which was also duly recorded. James Evans, the trust creditor, died on ―― day of - ――, 1889, leaving a will whereby he appointed his son Thomas R. Evans, and his two sons-in-law, Oliver H. Dille and John N. Dawson, his executors, who proved the will and qualified as executors, and thereupon requested and required the trustee, Clarence B. Dille, to advertise and sell the three tracts mentioned in the deed, the tract of thirteen and a half acres having been released. The trustee accordingly advertised that he would, on the 26th of May, 1890, in front of the court-house in Morgantown, W. Va., sell said three tracts for one third cash in hand, one third in a

year, with interest, and the residue payable in two years with interest, taking from the purchaser notes with good security, and retaining the legal title till the notes were paid. Thereupon plaintiffs brought this suit in equity, making the following defendants: Thomas R. Evans, Oliver H. Dille, and John N. Dawson, executors of the last will of James Evans, deceased, Clarence B. Dille, trustee, Marshall M. Dent, trustee, and Joseph Moreland, trustee—setting out, *inter alia*, the above facts, and making exhibits of these trust deeds *etc.* They charge the debt secured to be usurious; that the lands are very valuable, worth three times the debt claimed as due; that neither of said deeds of trust has been released; that the legal title is outstanding; that the amount due is not ascertained, nor the amount of usury. They therefore pray that said executors and trustees be made parties defendant; that they answer fully as to the eight *per cent.* and certain other special interrogatories; that a preliminary injunction may be granted, restraining the sale under the trust deed until the legal title can be got in; that the real and true amount of money due under the trust deeds or deed be first ascertained by the court, according to the rules and practice of courts of chancery, the usury, if any, purged away, and finally, that the court may take charge of and execute said trust, causing complete justice to be done, as to the court shall seem right. The temporary injunction was granted May, 10, 1890. The defendants the executors answered, denying the usury and other charges as to the amount due, but say that they are informed and believe that the land is worth fourteen thousand dollars, *etc.*

Our law on the subject of commissioners in chancery and their reports is found in chapter 120, p. 818, Code (Ed. 1891). Every commissioner shall examine and report upon such accounts and matters as may be refered to him by any court. After its completion he shall retain it ten days for the examination of parties unless otherwise ordered by the court or agreed by the parties. Any party may inspect the report without taking a copy, and file exceptions thereto, and the commissioner shall, with his report, return the exceptions, with such remarks thereon as

he may deem pertinent, and the evidence relating thereto; but any party may except to such report at the first term after it is returned or by leave of the court after such term.

The eleven exceptions of defendants to this report bear no date, as they should have done, and there is nothing to show when they were filed, except that they were read at the final hearing, April 12, 1892, eleven months after it was filed. If the exceptions had been filed with the commissioner, he would have examined them, and made some additions, and perhaps corrections, to his report; such, for example, as a statement showing the amount due the executors on the theory that no usurious interest had been charged or paid. At any rate, the general convenience of such a practice is obvious, often obviating the delay of recommittal, and evidently contemplated by the statute as the general rule; and, for the same reason, the rule in many courts is that no exceptions to the commissioner's report can be made which were not taken before him. See *Story* v. *Livingston*, 13 Pet. 359; *McMicken* v. *Perrin*, 18 How. 510; Sand. Eq. 633; 1 Fost. Fed. Pr. § 315.

A good commissioner is the right arm of the court, and his services are indispensable to the due administration of justice in cases like this. The investigations and conclusions of a man of sense and experience as a commissioner have been found to be entitled to great weight. Hence the reason of the rule that every presumption is in favor of the correctness of the decision of a master, and it is not usual to reject his findings, unless upon examination, such findings are found to be unsupported or defective in some essential particular. See *Kimberly* v. *Arms*, 129 U. S. 512–524 (9 Sup. Ct. 355); citing *Callaghan* v. *Myers*, 128 U. S. 617–666 (9 Sup. Ct. 177); *Tilghman* v. *Proctor*, 125 U. S. 136 (8 Sup. Ct. 894); *Medsker* v. *Bonebrake*, 108 U. S. 66 (2 Sup. Ct. 351). See *Keck* v. *Alender*, 37 W. Va. 291 (15 S. E. Rep. 520); *Fry* v. *Feamster*, 36 W. Va. 454 (15 S. E. Rep. 253); *Reger* v. *O'Neal*, 33 W. Va. 159 (10 S. E Rep. 375); *Fisher* v. *McNulty*, 30 W. Va. 195 (3 S. E. Rep. 593); *Smith* v. *Yoke*, 27 W. Va. 642; *Handy* v. *Scott*, 26 W. Va. 710; *Graham* v. *Graham*, 21 W. Va. 698; *Prichard* v. *Evans*, 31 W. Va. 137 (5 S. E. Rep. 461); *Boyd* v. *Gunnison*, 14 W.

Va. 1; *Ward* v. *Ward*, 21 W. Va. 262; *Thompson* v. *Catlett*, 24 W. Va. 525; *Lynch* v. *Henry*, 25 W. Va. 416.

Our statute makes six *per cent.* the legal rate of interest for the loan or forbearance of money, or other thing of value, and forbids any person from taking on any contract money or other thing above the value of such rate, and makes all such contracts and assurances, made directly or indirectly for a loan or forbearance of money at a greater rate, usurious as to such excess of interest agreed to be paid, and no further; and it provides for the trial of the question: (1) Was the contract assurance or other writing usurious? (2) If usurious, to what extent? (3) Whether or not interest has been paid on the contract or writing above six *per cent.*, and, if so, to what extent? It also gives the borrower the right to exhibit his bill in equity against the lender and compel him to discover upon oath the money or thing really lent *etc.*; and if property has been conveyed to secure the payment of the debt, and a sale thereof is about to be made or apprehended, an injunction may be awarded to prevent such sale pending the suit. See Code (Ed. 1891) c. 96, p. 713.

This was one of the purposes, and only one among others, for which this suit in equity was brought, and the injunction prayed for. The court on hearing the cause on the pleadings and proofs therein referred these questions as to usury mentioned in the statute to Commissioner Lazzell, and I can not see any good reason in this record why such reference was not eminently proper; and, if we are to apply to the findings and conclusions of the commissioner the rule already announced, it is difficult to see why they should not be held to be in the main correct. Without going into details, it is only necessary to say that I do not think there is any clear and decided preponderance of testimony against his finding on the question of usury; at any rate the court ought to pass directly upon the report.

But there are reasons why this cause should have been retained, and the trust executed under the direction of the court, no matter what conclusion the court may have reached in regard to the alleged usury. Trusts are especially the subject of equitable supervision, and courts of eq-

uity are always open, at the instance of the *cestui que trust*, to compel trustees to perform their duties. They will also interfere by injunction to restrain the improper exercise of the powers of the trustee (1 Bart. Eq. Pr. 444) whose duty it is to look to the interests of the trust-debtor as well as those of the creditor. In deeds of trust, especially those of long standing, where the amount due and to be raised by a sale is uncertain (*Hogan* v. *Duke*, 20 Gratt. 244, 253) where there are various deeds of trust or other incumbrances (*Horton* v. *Bond*, 28 Gratt. 815; *Cole* v. *McRae*, 6 Rand (Va.) 644) where the legal title is outstanding (*Rossett* v. *Fisher*, 11 Gratt. 492, 498) where there is a cloud upon the title (*Lane* v. *Lidball*, Gilmer, 130) or in conclusion any impediment to a fair execution of the trust, the trustee, who is the agent of both parties, and bound to act impartially between them, may and ought of his own motion to apply to a court of equity for his own safety, as well as for the interest of those concerned, to remove the impediment and direct his conduct; and, if he should fail to do this, the party injured by his default has an unquestionable right to do so. *Rossett* v. *Fisher*, 11 Gratt. 492, 498 opinion of Judge Moncure, who refers to 1 Lomax, Dig. 322–326; 1 Tuck. Comm. bk. 2, pp. 101, 106; *Quarles* v. *Lacy*, 4 Munf. 251; *Gay* v. *Hancock*, 1 Rand. (Va.) 72; *Chowning* v. *Cox*, *Id.* 306; *Gibson* v. *Jones*, 5 Leigh, 370; *Miller* v. *Argyle*, *Id.* 460; *Wilkins* v. *Gordon*, 11 Leigh, 547. See opinion of same judge in *Hogan* v. *Duke*, 20 Gratt. 224, 253. See opinion of Burks, J., in *Horton* v. *Bond*, 28 Gratt. 815, 822, where the same principle is applied to decrees of sale. See, also, *Shultz* v. *Hansbrough*, 33 Gratt. 567, 576 (opinion of Burks, J).

The loans in this case ran through a period of ten years; were secured by four different deeds of trust, and as many different trustees all made defendants. It is true that the last deed of trust, dated January 1, 1885, to Clarence B. Dille, trustee, who was about to sell, recites that three thousand five hundred dollars thereby secured as the balance due at that date, after deducting all credits, upon three deeds of trust theretofore executed by plaintiff, reciting them; but the creditor did not execute the deed of

trust containing such recital, and, although he accepted it, no technical release was ever executed by him according to section 1, c. 76, of the Code, so that it might be a question whether the naked legal title to the two important tracts did not still stand vested in Marshall M. Dent, trustee in the deed dated November 10, 1876, and of the two smaller tracts in O. H. Dille, trustee. C. B. Dille advertised that he would sell the whole under the deed of trust, in his notice representing it as the only body of coal on the east side of the river for sale, underlaid with over one hunderd and fifty acres of coking coal. Now, it may be that this mineral might of itself bring enough to pay the trust-debt, but the trustee without some competent authority, to whose directions he could look for his guidance and protection, could not sell the mere "mineral right;" or it may be that one of the tracts would bring enough, and in either mode the trust-debt might be fully satisfied, and the plaintiffs left still owners of their farm and home. The land is estimated to be worth fourteen thousand dollars and I infer from the record that the vein of coking coal constitutes a good part of such value. See *Mickie* v. *Jeffries*, 21 Gratt. 334; *Stove Works* v. *Gray*, 9 W. Va. 469. See Bart. Chy. Pr. 446.

The bill itself is framed, not only with reference to purging the trust-debt of usurious interest, but alleges all these additional grounds for having the trust executed under the sanction and direction of the court; and for this plaintiffs expressly pray. Nor do defendants, in their answer attempt to deny, explain, or remove any of these impediments to a sale in the country by the trustee; only they insist that the debt is all due, that there is no usury, and, if any such usurious interest had been taken by the testator, it was more than five years before the bringing of the suit, and they set up and rely on the bar. My construction of the third clause of section 6, c. 96, of the Code, is that the excess of interest paid is to be credited, as long as any part of the usurious contract remains unpaid. This is a point, however, to which the commissioner's attention was not directed, and upon which he has not reported.

We are of opinion, therefore, that the decree of April 12, 1892, is erroneous, and must be reversed, and that the

cause must be remanded for further proceedings; the cause to be retained, and the trust executed, under the direction and sanction of the court.