# CHARLESTON.

Mary B. McGraw et als. v. William Morgan, Trustee, et als.

Submitted November 6, 1917.   Decided November .13, 1917.

1. Mortgages—*Foreclosure—Trust Deeds—Instruction.*
   If the amount secured by a deed of trust on real estate is un-
   certain and disputed, a court of equity will entertain a bill for
   ascertainment of such amount and enjoin any threatened sale
   under the deed of trust, until the amount secured thereby is de-
   termined, at the instance of the debtor.   (p. 334).

2. Appeal and Error—*Review—Findings.*
   A decided and heavy preponderance of evidence against the
   finding of a trial court, on an issue of fact, justifies ·reversal
   thereof by the appellate court.   (p. 334).

Appeal from Circuit Court, Taylor County.

Suit by Mary B. McGraw and others against William Mor-
gan, trustee, and others.   From decree from defendants, the
named complainant appeals.

*Reversed and remanded.*

*John G. St. Clair,* for appellant.

*Warder & Robinson,* for appellee First National Bank of
Grafton.

*O. E. Wyckoff,* for appellees Clarksburg Trust Co., Taylor
County Bank and M. P. Thomas.

Poffenbarger, Judge:

The issue on this bill to enjoin a sale under a deed of trust,
for uncertainty in the amount of the debt actually secured
by it, have been narrowed down to one of the twelve $2,500.00
negotiable notes mentioned and described in it.   As to all the
others, the proof is perfectly clear and conclusive.

The theory of the bill is that several of the notes, all of
which were executed and delivered for a certain purpose,
namely, to enable John T. McGraw to pay about $30,000.00.
on his indebtedness to the Grafton Bank, for its relief from
embarrassment, were diverted from such purpose, with the
knowledge of the holders thereof, wherefore they are not en-

titled to the security afforded by the deed of trust. Two such injunctions were awarded, one on the original bill and another on an amended bill, both of which were dissolved and the bills dismissed.

The proceeds of the sale or disposition of eleven of the notes, $27,042.10, were placed to the credit of John T. Mc-Graw in the Grafton Bank and used by him. In so far as the decrees complained of protect the holders of those notes, they are manifestly right.

The other note is held by the First National Bank of Grafton, but was not purchased nor discounted by it. Nevertheless, it claims to be a purchaser thereof for value, before maturity and without notice of the purpose for which it was executed, or any other equity or defense. There is no proof of any such notice and it obtained the note before maturity, as a pledge, but whether the purpose of the hypothecation has been satisfied and the relation terminated, is a vital question in the case, dependent upon the purpose for which the pledge was made. The holder claims the note was delivered to it by Chas. R. Durbin, the payee thereof and president of the Grafton Bank, as collateral security for his personal indebtedness to it, the First National Bank.

All the notes were executed by John L. Heckmer, made payable to Chas. R. Durbin and secured by a deed of trust on Mary B. McGraw's property, but they were to be used for the benefit of John T. McGraw, primarily and the Grafton Bank incidentally. They were delivered to the Grafton Bank or Durbin, to be negotiated for such purposes. This one was not taken to the First National Bank for Durbin's personal use. Admittedly, it was not first offered for such purpose. He took it there for discount or for collateral security for a draft of the Grafton Bank on a Pittsburgh bank, in favor of the First National Bank, made to cover the exchange in favor of the last named bank, for he offered it for that purpose and he and another witness, the assistant banking commissioner, say that was the purpose for which he took it there. O. J. Fleming, an officer of the First National Bank, says it was so offered, but that he declined to take it, as collateral for the draft, but later took it, when offered as collateral

for Durbin's own indebtedness. It and the draft were both left there and the draft was soon afterward taken up and paid by the Grafton Bank and the collateral note called for. Its return was immediately demanded by Cole, cashier, or Durbin, and later by three other persons, Jeffreys, Heckmer and McGraw, but refused upon the claim that it had been pledged, not for the draft, but for Durbin's indebtedness.

Although Fleming says Durbin was summoned to his bank, on the day of this transaction, for consultation about two notes he had there discounted and the latter does not deny the fact, the note in question was not mentioned in the conversation about the two discounted notes. Durbin promised to furnish additional collateral for one of them and to write the endorsers on the other, requesting them to pay it. According to Fleming's own testimony, that conversation terminated, before any reference was made to the note here involved. It was then tendered as collateral security for the draft. Durbin says it was accepted. Fleming says it was rejected and he kept the draft, notwithstanding he knew there was doubt as to whether the Pittsburgh bank would honor it, and he had told Durbin he would not take it unless it was good, but, on the contrary, would demand cash or a return of the items representing the clearings of that day. Durbin had asked him to hold it a day or two, saying he doubted the sufficiency of the Grafton Bank's balance to cover it, but, upon Durbin's subsequent statement that it would be paid, he took it for immediate use. He says Durbin, after all these transactions and without any solicitation on his part, handed him the note in question for collateral security for his own indebtedness. Durbin thinks he personally took up the draft and demanded return of the note, but is not certain as to that. Jeffreys says he asked Durbin or Cole, the cashier, to get the note from the other bank, and afterwards Durbin advised him of the refusal to surrender it and the ground thereof. Fleming says Cole took up the draft and demanded the note. Properly interpreted, Durbin's testimony on cross-examination does not admit a general pledge of the note.

His bank was causing him more trouble at the moment than his own indebtedness. Fleming had accepted his promise,

and was making no further demand upon him, as to the latter, but the bank's draft had not been provided for, and this note constituted the best means of raising money with which to pay it. To give it up as security for his own debts, without a demand for it, when it was so badly needed for another, was not at all in the line of his purposes as indicated by the exigencies of the situation. Nor is it likely that Fleming took the draft for immediate collectioin and without security, after having been told it probably would not be honored. Though demanding cash or its equivalent in the settlement of the daily balance between the banks, he finally took Durbin's promise that the draft would be honored. These are inconsistencies plainly disclosed by his testimony, and the conduct of the other parties to the transaction, as well as their evidence, squarely contradicts him. In our opinion, there is a decided and heavy preponderance of evidence in favor of the plaintiff, and the note must be deemed and held to have been pledged as security for the draft only, payment of which terminated the pledge.

As developed, the cause discloses purpose on the part of the trustee to sell the trust deed subject for payment of this note, as well as the others, and the existence of a dispute as to the amount of the debts for which there is right of sale. In such case, it is the duty of a court of equity, upon proper invocation of its aid, to settle and determine the amount of the debt and enjoin any threatened sale, until the true amount thereof is ascertained. *Hartman* v. *Evans,* 38 W. Va. 669; *Hogan* v. *Duke,* 20 Gratt. 244, 253.

These conclusions call for reversal of the final decree, reinstatement of the injunction, an adjudication here that the First National Bank of Grafton has no title to the note in question nor any right to have the property conveyed by the deed of trust mentioned and described in the bill and proceedings sold to pay the same, and remand of the cause for further proceedings therein.

*Reversed and remanded.*