# CHARLESTON.

LEVINE BROTHERS *v.* R. E. MANTELL.

Submitted January 24, 1922. Decided January 31, 1922.

1. SET-OFF—*Plea of—Founded Upon Unliquidated Damages Must be Excluded on Proper Objection, Unless Waived.*

    Although a claim for unliquidated damages is not proper matter for a set-off, in the absence of peculiar circumstances, and a plea of set-off founded upon it must be excluded by the trial court, upon a proper and timely objection thereto interposed by the plaintiff, right to have it excluded is waived by his failure to demur to the plea, resist the filing thereof and object to the introduction of evidence to sustain it. (p. 171).

2. UNLIQUIDATED DEMAND—*Non-Delivery of Goods.*

    A claim for damages for non-delivery of goods sold is an unliquidated demand. (p. 171).

3. INSTRUCTIONS—*Charging Jury that it may Disregard all the Testimony of Witness they Believe Has Wilfully Sworn Falsely to a Material Fact Held to be Erroneous.*

    Direct and irreconcilable conflict in the testimony of the principal witnesses in a case, as to several material questions of fact involved therein, does not justify the giving of an instruction telling the jury that, if they believe from the evidence any witness has wilfully sworn falsely to any material fact in the case, they may in their discretion disregard all the testimony of such witness. (p. 172).

4. EVIDENCE—*Duty of Jury to Consider Evidence of Witness Other than that Found to be False.*

The maxim, *"Falsus in uno, falsus in omnibus,"* is a mere rule of evidence affirming a rebuttable presumption of fact, under which the jury must consider all the evidence of the witness, other than that which is found to be false, and it is their duty to give effect to so much of it, if any, as is relieved from the presumption against it and found to be true.   (p. 173).

5. APPEAL AND ERROR—*Verdict Set Aside by Lower Court for Harmless Error will Not be Disturbed by Appellate Court.*

An order of the court below, setting aside a verdict for the error in giving such an instruction, will not be disturbed by the appellate court, upon the theory of harmlessness of the error, unless the latter court can see that the verdict was plainly and clearly right.   (p. 173).

6. SAME—*Trial Court's Peculiar Knowledge of the Case Affords a Basis for Exercise of Judicial Powers on Motion for New Trial which is Entitled to Respect in Appellate Court.*

Such error supplemented by the trial court's peculiar knowledge of the case, derived from observation of the actors therein affords a basis for the exercise of its judicial powers, and its judgment upon the question of the sufficiency of the error to sustain a motion for a new trial is entitled to the usual degree of respect in the appellate court.   (p. 173).

7. COMPROMISE—*Introduction of Testimony Explaining Correspondence Relating to Controversy in Effort to Effect it.*

A party to a suit who has rigidly declined all overtures of compromise of the matters in difference between him and the opposite party, is not in a position successfully to resist introduction of the testimony of his opponent's attorney, filing and explaining correspondence relating to the controversy, upon the ground of disclosure of admissions made in an effort to compromise.   (p. 173).

8. EVIDENCE—*Of Transactions by Which Respondent was Not Affected Inadmissible.*

The rule, *Res inter alios acta,* precludes introduction of evidence of transactions by which the proponent was in the way affected and to which he was in no sense a party.   (p. 175).

9. INSTRUCTIONS—*Modification of by Elimination of Matter Having no Evidence for Basis.*

An instruction containing matter having no basis in the evidence may properly be modified by elimination of such

matter, by the trial court, before allowing it to go to the jury. (p. 175).

10.   ARGUMENT—*Defendant Has Right to Open and Close in Action Involving, Plea of Set-Off when Liability of Plaintiff's Demand is in Evidence and Denied.*

In an action involving a plea of set-off, the issue arising on which constitutes the only real controversy between the parties, liability for the plaintiff's demand being admitted in evidence but denied by a plea, the defendant has right to open and close the argument. (p. 175).

Error to Circuit Court, Kanawha County.

Action by Levine Brothers against R. E. Mantell. Verdict for plaintiffs, new trial allowed and plaintiffs bring error.

*Affirmed.*

*E. L. Long* and *Henry S. Cato,* for plaintiffs in error. *Morton & Mohler,* for defendant in error.

POFFENBARGER, PRESIDENT:

Denial of error in the trial of an action of assumpsit for recovery of the price of goods sold and delivered, in which there was a claim for damages for non-delivery of other goods purchased from the plaintiffs by the defendant, sufficient to justify the setting aside of the verdict allowing plaintiffs' claim and disallowing that of the defendant, constitutes the basis of this writ of error.

As of September 23, 1919, the defendant owed the plaintiffs a balance of $700.08, on account of merchandise sold to her, which, with interest from September 23, 1919 to May 5, 1920, the date of the filing of the declaration, amounted to $726.08. As to this amount, there was no controversy. The balance due as of September 23, 1919, includes a charge of $148.00, the price of eight suits of clothes shipped to the defendant, on account of a large order given by her to the plaintiffs, May 19, 1919. The controversy arises over the defendant's claim for damages for non-delivery of the remainder of that large order. On this account, she endeavors to off-set $2,384.75, for extinguishment of the debt due the plaintiffs and recovery of a balance due her. At

the date of the acceptance of said large order, she owed the plaintiffs a balance of about $500.00.    After that date and before any controversy arose, the plaintiffs shipped to her goods amounting to nearly $800.00 and she paid on account thereof about $600.00, in cash and by return of goods.    In the letter transmitting the invoice for the eight suits shipped on the order of May 19, 1919, the plaintiffs advised her of an enormous advance in the prices of the merchandise and of their willingness to deliver the balance of the order, in the event of further increases, and of their notification to all of their customers that they could expect delivery of their merchandise all the way up to February, 1920, on account of slowness of the mills in making deliveries.    In reply to that letter, she advised them of her intention to insist upon the deliveries according to contract and to take legal action if necessary to protect her interests.    Replying to this letter under date of November 6, 1919, the plaintiffs advised her that it would be necessary to charge an additional $3.00 on each one of certain suits, and that then their losses would be heavy, as they had been compelled to pay as much as $6.00 per garment more than they had expected to pay at the mills.    Defendant's letters were written under advice of her attorney.    As correspondence between them and the plaintiffs' attorneys in Cincinnati began, November 11, 1919, the latter were no doubt acting upon legal advice.    At about this time, laxness of defendant in meeting her bills was drawn into the controversy and relied upon as justification of failure of the plaintiffs, to make further deliveries, and this position was based upon demands for payment made by letters of August 1, and 14, and October 15, 1919.    In a letter dated, November 11, 1919, the plaintiffs' attorneys Bolsinger, Kuhn and Bolsinger, brought this to the attention of the defendant's attorneys, and reminded them of the invoice of June 18, $529.00, for goods sold on thirty days time.    While relying upon non-payment of the indebtedness of the defendant, as justification for refusal to make further deliveries on the order of May 19, 1919, the plaintiffs' attorneys, on their behalf, offered in this letter, on payment of the $700.08 due, to have their client ship her twenty suits on that order at

once and the balance from time to time, as fast as they could be obtained from the mills, at the prices stipulated therein. In this offer, there was but one condition, namely, payment of the $700.08, one contingency, namely, ability of the plaintiffs to get the merchandise, and one qualification, namely, payment on receipt of goods. This proposition seems to have been declined upon the ground that the goods were ordered for delivery, October the 1st, and for the fall trade, and that the terms were changed. Neither in the letter of September 24, nor the one of November 6, from the plaintiffs to the defendant, had mention been made of an alleged stipulation in the order, making delivery of the goods optional with the plaintiffs. Whether there was such a provision in the contract is one of the principal issues in the case. Printed at the top of one of the two carbon copies of the order is found a clause reading as follows: ''This order is accepted by us on the following terms and conditions only that we are not responsible for non-delivery of this order or any part thereof.'' It was torn off of the original in detaching it from something to which it was pasted while in use in plaintiffs' place of business. From another copy left with the defendant, at the time the order was given, it has been cut off. The first reference to this stipulation is found in the letter from Bolsinger, Kuhn and Bolsinger to the defendant's attorneys.

Evidence bearing on the purpose of the order was introduced by both parties, the defendant insisting that the goods were ordered for use in a particular mercantile season, the fall, and the plaintiffs, that they were not bought for such purpose, but for all the year trade, as the quality of the goods indicates. Max Mantell, the defendant's husband and agent in charge of her business, testified that he had met one of the plaintiffs in Cincinnati in August, 1919, and that he had then had a conversation with him, in which Levine admitted that he had the goods and could make delivery thereof and would do so, if he would pay him $5.00 additional on each suit. His statement as to this is not entirely clear, but that seems to be what he meant by what he said. Levine denies this positively and emphatically, say-

ing he had not seen Mantell in Cincinnati at all, between the date of the order and some time in February, 1920. Some time after this conversation and prior to September 29, 1919, Mantell went to New York and purchased from the Rosenthals, goods of the same quality or kind as those ordered from Levine Bros., at prices very much higher, and shipments thereof were commenced about the last of September. A circumstance relied upon as indicating that the purchase of these goods was not replacement of those ordered from the plaintiffs, is the purchase of more suits in New York than had been ordered from them.   The Levine Bros. order seems to have been for about 123 suits costing about $1,850.00 and the purchase from the Rosenthals included about 150, costing about $5,200.00.   Shipments of the New York goods began September 29, 1919, and continued until March 2, 1920.

As to the clause making fulfillment of the order optional with the plaintiffs, or exonerating them from liability for nondelivery, Mantell and Levine agree that the original and copies contained it, at the beginning of their negotiations. As to everything else relating to it, they disagree; Mantell swearing he noticed it and refused to give the order with such a stipulation in it and that, upon his demand for an unconditional acceptance, Levine cut it off of his copy; and Levine swearing it was not noticed, or, if noticed, not commented upon or mentioned in any way.

As only $148.00 of the amount for which the plaintiffs sued is indebtedness arising out of the order of May 19, 1919, and all the balance thereof arose out of separate and distinct contracts, the damages claimed by the defendant would not constitute a right of recoupment except as to the sum of $148.00.   That right must arise out of the contract on which the plaintiffs' action is based.   *Orrick & Son Co.* v. *Dawson,* 67 W. Va. 403.   However, it is not relied upon here. The demand is asserted by way of set-off.   As such, it is not good, for it is a claim for unliquidated damages.   *Van Raalte Co.* v. *Solof Bros.,* 89 W. Va. 66, 108 S. E., 488; *Christian* v. *Miller,* 3 Leigh 78.   In other words, if the plaintiffs had interposed an appropriate objection to entertain-

ment thereof, the trial court would have been. bound to ex-
clude it.    No 'objection having been interposed by demurrer
to the plea, objection to the filing thereof, or otherwise, the
question arises, whether an appearance thereto by the plain-
tiffs and submission of the two cases with the implied consent
of the parties on both sides, bound the plaintiffs and enabled
the trial court to hear and determine the cross-demand.    In
New York, the courts answer in the negative.    Generally,
however, it is held that the plaintiff by his failure to demur
or object to the cross-pleading, waives his right to put
the defendant to an independent action.    31 Cyc. 728. Here,
however, neither a demurrer to the plea, resistence to the fil-
ing thereof nor objection to the introduction of evidence in
support of it, was interposed.    After all this acquiescence,
it is clear that the plaintiffs would have no just right now to
complain of the court's entertainment of the cause of action.
*Mitchell* v. *Joyce,* 75 Ia. 449; *Jacobson* v. *Aberdeen Packing
Co.,* 26 Wash. 175.    It is equally clear that this court ought
not to eliminate the counter claim *ex mero motu,* under the
circumstances.·    The question relates to the rights of the
parties rather than the jurisdiction of the court, and that
right pertains to matter of form rather    than    substance.
Abundant authority holds that parties may by consent waive
process and submit their controversies to a court by agree-
ment.    Here, the plaintiffs have voluntarily appeared to the
defendant's cross-action and made defense thereto.    If a
separate action had been instituted by the defendant and
both actions matured and made ready for hearing, we have no
doubt that the trial court, in its discretion and with    their
consent, could have ordered them to be heard together and
tried by one jury.    4 Ency. Pl. & Pr. sec. 683.

The ground upon which the verdict was set aside is not
disclosed by the record, but, in argument, it seems to be con-
ceded, that the trial court based its action upon its overruling
of an objection to instruction No. 2, given at the instance of
the plaintiffs and reading as follows:  "The court instructs
the jury that if they believe from the evidence that any
witness· in this case has wilfully sworn falsely as to any ma-
terial fact in this case, they may in their discretion disregard

all testimony of such witness." A similar instruction was approved in *State* v. *Perry,* 41 W. Va. 641. But later decisions have disapproved and condemned the substance of it, deeming it, when given, to be an unwarranted invasion of the province of the jury, by the court. *State* v. *Wilson,* 74 W. Va. 772; *Seiver* v. *Coffman,* 80 W. Va. 420; *Cobb* v. *Dunlevie,* 63 W. Va. 398. Although the jury may believe that a witness has knowingly testified falsely in respect to one fact, they have no right to disregard his testimony, in so far as they are convinced that it is true. The maxim *"Falsus in uno, falsus in omnibus,"* asserts nothing more than a presumption of fact, which, like all others, may be rebutted, and it is the duty of the jury so to apply it. They take all of the other evidence of the witness, subject to the presumption, but, in so far as they find the presumption has been rebutted, they should give effect to the truthful part of the testimony. This view accords with a decided weight of authority, as the rulings referred to in Blashfield on Instructions, Vol. 1, secs. 380, 381, demonstrate.

To the argument that the error committed in the giving of this instruction was harmless and, therefore, did not justify the setting aside of the verdict, it suffices to say its sufficiency for such purpose was a question upon which the court below had to pass and render its decision. This adjudication, like all others of trial courts, must stand, unless it is found to be erroneous. As was held in *Hodge* v. *Charleston Interburban Railway Co.,* 79 W. Va. 174, there is no discretionary power in a trial court to grant a new trial, in the absence of legal ground therefor. But an error in the -trial discovered by the judge or brought to his attention on a motion for a new trial, constitutes a basis for the exercise of his judicial power, and there is no total absence of legal ground therefor. Having found this, he may invoke and use, in addition thereto, his general knowledge of the case, obtained by observation of the parties, witnesses and jurors and their appearances, demeanor and conduct throughout the trial. His judgment based upon the error and such knowledge is entitled to a high degree of respect, in the appellate court, and the judgment or ruling will be sustained in cases

and under circumstances not justifying award of a new trial, by the appellate court whose knowledge of the case is derived from the printed record alone.    Upon this ground, it is frequently held, that a stronger case must be made out in the appellate court for a new trial than is required to sustain the action of the trial court, in awarding it. *Shipley* v. *The Virginian Railway Co.,* 87 W. Va. 139, 144; *Coleman* v. *Barrett,* 61 W. Va. 237; *Black's Adm'r* v. *Thomas,* 21 W. Va. 709; *Miller* v. *Insurance Co.,* 12 W. Va. 116; *Wilson* v. *Fleming,* 89 W. Va., 553, 109 S. E. 810.    Although this court, looking at the dry records, has never granted a new trial for the error in giving an instruction like the one now under consideration, this rule precludes reversal of the order complained of in this case, error in it not being clearly apparent.

To sustain the action of the trial court as well as to obtain rulings upon certain questions raised in the course of the trial, for guidance in the new trial contemplated, the attorneys for defendant in error have inserted several cross-assignments of error in their brief.    One of them is founded upon the overruling of an objection to instruction No. 1 given for the plaintiffs.    The instruction is based upon the non-delivery stipulation relied upon by the plaintiffs, and the criticism is that it assumes agreement upon it, or assent to it by the defendant.    We are unable to discover such an assumption in its terms.    Manifestly, it leaves it to the jury to say, from the evidence, whether there was such a stipulation in the contract.    It says:    "If they (the jury) further believe from the evidence that the contract * * * * * contained a condition that the plaintiffs, Levine Bros., were not to be responsible for the non-delivery of said order or any part thereof, and that the defendant purchased said goods on that condition," there could be no recovery of damages by the defendant.

As Mantell promptly declined all overtures of compromise, made through Bolsinger, Kuhn and Bolsinger and otherwise, there is nothing in the contention that the testimony of H. C. Bolsinger, submitting and analyzing the correspondence conducted through his firm, with the defendant's attorneys, should have been excluded, as containing admissions made by

Mantell in the course of an effort to compromise. Mantell stood firmly and unrelentingly upon her alleged contract from first to last.

As the increases in prices imposed by the plaintiffs upon the firm of Davidson and Preiser, in their performance of a contract made with that firm, at about the date of the making of the contract with the defendant, were transactions *res inter alios acta,* the trial court properly rejected the evidence offered to prove them.     *Eastburn* v. *N. & W. Railway Co.,* 34 W. Va. 681.

Lack of evidence of the insolvency of the defendant justified the court in its modification of defendant's instructions Nos. 2 and 4, so as to eliminate assumption therein of the existence of such evidence. A court cannot properly give an instruction having no basis at all in the evidence. *Kuykendall* v. *Fisher,* 61 W. Va. 87.

Though this case does not fall strictly within the rule enunciated in *Sammons & Piercy's Ex'rs.* v. *Hawvers,* 25 W. Va. 678, reversing a judgment and granting a new trial, for denial to the defendant of the right to open and close the argument, the plaintiff's demand not having been denied in the pleadings and the only matters in controversy being payment and usury in the debt.     Here, the plaintiffs' debt was denied by a plea; nevertheless, the trial court should have observed that rule and applied it, because the debt was admitted in the evidence, and the only issue actually tried arose on the defendant's plea of set-off.     It is unnceessary to say whether this error, if any, justified award of the new trial, but it is necessary to say what the procedure shall be in the new trial, and we are of the opinion that it should conform to the ruling in the case just cited.     This case falls clearly within the spirit of that rule.

For the reasons stated, the order complained of will be affirmed.

*Affirmed.*