# Richmond

## RALPH E. TURPIN v. G. H. BRANAMAN, E. W. BARGER AND C. M. LAMBERT, ETC.

March 13, 1950.

Record No. 3613.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Robert C. Goad*, for the plaintiff in error.

*Humes J. Franklin* and *Wayt B. Timberlake, Jr.*, for the defendants in error.

MILLER, J., delivered the opinion of the court.

Ralph E. Turpin, defendant in the court below and here so designated, seeks reversal of a judgment in favor of G. H. Branaman, E. W. Barger and C. M. Lambert, partners trading as Alta Vista Orchards, and hereinafter referred to as plaintiffs.

This partnership operates an orchard in Augusta county and is engaged in growing and selling apples. Defendant is likewise an owner of orchards, and is also a licensed commission merchant. He grows, buys and sells fruit, and acts as broker for others in the sale of their orchard and farm products.

The chief factual controversy is whether or not a transaction between these parties, which culminated in a verdict and judgment against defendant for $2,196.34, was a sale of apples by plaintiffs to defendant, or was defendant, as he contends, merely acting as broker in the sale of the apples to another party?

The testimony is highly conflicting. Plaintiffs contend that through an oral contract and agreement they made sale of fifteen truckloads of apples to defendant and as directed by him, delivery was to be made to Zigler Canning Cooperative, Inc., Timberville, Virginia. This company will be hereinafter referred to as the Co-op.

Defendant insists that the oral contract between him and plaintiffs was not a sale of the apples to him, but that he merely acted as a broker in the transaction whereby sale and delivery by plaintiffs was actually made to the Co-op. In short, defendant insists that he was not the buyer of the apples and thus incurred no personal liability to pay for them.

The proof offered by plaintiffs establishes that their orchard manager, E. T. Almarode, talked on the phone with defendant relative to the sale of York apples from their Alta Vista Orchard. Defendant suggested that he be allowed to act as broker and sell the apples to the Co-op. To that suggestion, Almarode replied that his principals did not own any stock in the Co-op and therefore he did not think they could sell to it. He further testified that defendant thereupon said, "Sell them to me." Almarode then reported back to Mr. Branaman, who instructed him not to sell to the Co-op, but authorized him to sell the apples to defendant. Following out that instruction, he immediately went to defendant's office and advised his employee and office manager, Mr. Mehler, that they would sell the apples to Mr. Turpin. He says their conversation was, "I told Mr. Mehler, 'We are going to sell you those apples and how do you want to put them in Timberville.' He said, 'Put them through Ralph Turpin to Alta Vista' and we started hauling them the next morning, fifteen loads."

Other evidence given by this witness strongly indicates that the sale was to defendant and not to the Co-op. Typical in this respect are the following extracts from his testimony:

"Q. What do you mean by his 'instructions were to sell them direct.'

"A. He meant sell them to Mr. Turpin. He wouldn't sell them through a co-operative.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"A. We didn't sell them to the co-operative. I sold them to Mr. Turpin.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Q. Whenever you had the conversation you claim you had with Mr. Turpin, you say Mr. Turpin told you to sell to this by-product plant?

"A. No, sir, said sell them to him—'I will buy them. Sell them to me.' "

Other evidence sufficiently establishes the fact that the weight, grade and sales price of the apples were to be determined by inspection and classification when delivered, the price being that prevailing at the Co-op for the particular quality of apples, less fifteen cents per hundred pounds as compensation or profit to defendant.

The total price of the fifteen truckloads of apples amounted to $4,196.34. By check of Ralph E. Turpin drawn to Alta Vista Orchards under date of January 3, 1948, $2,000 of this amount was paid. Accompanying that check was a memorandum which might indicate that he acted as broker in the sale to the Co-op, but is far from conclusive of that construction.

The oral testimony of defendant and his office manager and employee, M. L. Mehler, is definitely to the effect that defendant never purchased the apples but acted solely as broker.

The documentary evidence, consisting of what are called "Shed Receipts", which are the several receipts given by the Co-op when the apples were delivered to that company, the cancelled check for $2,000, paid plaintiffs by Ralph E. Turpin with the memorandum attached, and several statements of accounts, is in some particulars helpful to each litigant; yet, taken as a whole, it is not conclusive to establish the character of the transaction. In the final analysis, it may be justly said that the evidence, both oral and documentary, is conflicting and presents a factual issue as to whether the contract was one of sale or brokerage. Under such circumstances, the finding of the jury has resolved all conflicts in favor of plaintiffs and is binding upon us.

The next questions presented are: Did the court err in

the exclusion of certain testimony offered by defendant, and in the giving and refusal of instructions?

To maintain his contention that the agreement that he had entered into was not to buy the apples but to act as broker, defendant offered the testimony of two strangers to the transaction. This evidence was to the effect that he had entered into oral agreements and acted as broker for one of these witnesses and for other parties in the sale of their apples, and that when he bought apples himself, he always entered into a written contract. It was for the avowed purpose of proving by two persons who were strangers to this contract that in verbal transactions defendant had acted as broker, but when he bought for himself, he executed written contracts. It was attempted to thus establish by similar transactions that it was his course of conduct, habit and custom to act only as a broker in transactions similar to the one in question,—*i. e.*, where no written contract was executed.

This testimony was rejected by the court and we think, rightly so.

There was no ambiguity in the contract relied upon by plaintiffs or in that contended for by defendant. No question of construction was involved. Whichever contract had been entered into, its terms were fixed, certain and plain. The prevailing litigants asserted that the contract was one of sale and purchase—the other litigant insisted that he had made no purchase but that the agreement was definitely one in which he was to act as a broker. The testimony was highly contradictory as to which one of the two alleged contracts, each definite in its character and terms, had been entered into.

Upon that issue, the evidential worth of proof of other and former transactions of similar character entered into by a party to this contract with strangers was remote, irrelevant and of no probative value in determining which of the two alleged contracts was actually entered into on this occasion. It would only have added to and confused the issues and

tended to distract the minds of the jury from the real question presented. *Knox Stove Works* v. *Wall*, 180 Va. 267, 23 S. E. (2d) 161; *Powers* v. *Hamilton*, 117 Va. 810, at p. 814, 86 S. E. 98; *Repass* v. *Richmond*, 99 Va. 508, 39 S. E. 160; *Levine Bros.* v. *Mantell*, 90 W. Va. 166, 111 S. E. 501; *Hartman* v. *Evans*, 38 W. Va. 669, 673, 18 S. E. 810; 1 Jones on Evidence, 4th Ed., sections 140 and 141, pp. 247, 249; Vol. 2, Wigmore on Evidence, 3rd Ed., sec. 377, p. 310; 20 Am. Jur., "Evidence", sec. 302, p. 278.

Much in point is this paragraph from *Repass* v. *Richmond, supra*:

"Except in certain cases where the knowledge, motive or intention of the party is a material fact in the case, as it was not in this case, the general rule is that no reasonable presumption can be formed as to the making or execution of a contract by a party with one person in consequence of the mode in which he has made or executed similar contracts with other persons. Neither can parties be affected by the conduct or dealings of strangers. Transactions which fall within either of these classes are *res inter alios acta*, and evidence of this description is uniformly rejected." (99 Va. p. 514.)

Instruction No. 4 was objected to by defendant on the grounds that it "confuses the jury and there is no evidence in this case to base the instruction on."

It reads: "The court instructs the jury that the use of the words 'advance', 'Factor', or 'sale on commission' does not necessarily show a contract of agency rather than a sale."

The meaning of these words may not have been fully understood or comprehended by the jury. The instruction was intended to inform the jury that the use of the words and phrase was not controlling in establishing the character of the transaction between the contracting parties. It contains no misstatement of law but we think that it should have been more explanatory and have concluded with some phrase to the following effect: "But the import and meaning of the words and phrase when and as used by the

contracting parties may be considered along with all the other evidence in arriving at your conclusion."

The instruction would then have properly told the jury not only what conclusion should not necessarily follow from their use, but just what consideration could be rightfully given the words and phrase in question. An inspection of the record discloses, however, that the jury was fully instructed upon the respective contentions of the parties and expressly told what constituted a sale and what a brokerage transaction. Therefore we do not think this minor defect could have harmfully affected defendant. We find in it no reversible error.

Instruction B, offered by defendant and refused by the court, undertook to define in detail the duties of a commission merchant. It would have told the jury that the duties of such an agent were (a) to use diligence in selling the goods; (b) to use diligence in attempting to collect the purchase price; and (c) to account to his principal for all money received from the purchaser.

An instruction had been given by the court that fully defined what was a sale and what constituted a consignment of goods to a commission merchant. The jury was thus informed of the nature of the relationship that defendant contended existed between the litigants. Whatever the contract, there was no issue in regard to how defendant had performed any of his duties. The sole issue was what was the character of the contract, and not how he had performed any duties incumbent upon him; yet defendant wanted the court to inform the jury in this instruction as to the duties of a broker. Then, by showing that he had performed certain duties of a commission merchant and the court having impressed upon the jury in the instruction what the duties of such an agent were, defendant would thus seek to convince the jury that the relationship between the litigants was that of principal and agent and not vendor and vendee.

We do not think defendant was entitled to an instruction upon that abstract proposition of law, solely directed to matter so clearly not in issue, and thus have the court in-

directly aid him in his attempt to "lift himself by his own bootstraps." The instruction was properly refused.

Instruction H, offered by defendant and refused by the court, reads:

"The Court instructs the jury that, in order for a valid and enforceable contract to be established, it must be shown by a preponderance of the evidence that the offer to enter into the contract was sufficiently definite and certain to enable the contract formed by its acceptance to be given an exact meaning. The parties to the contract, the time of performance and the subject matter of the contract must be so specified with sufficient certainty. And the Court further instructs the jury that, in this case, the quantity of apples was an essential element of the contract, and if the parties did not agree with sufficient definiteness upon the quantity of apples that was to be handled by or sold to the defendant, then there was no contract between the parties and you must find for the defendant."

At the conclusion of the testimony, defendant moved the court to strike the evidence because "the evidence as to the sale is too indefinite" and because it "does not show a definite quantity of apples in the alleged sale * * *." He contended that the evidence on behalf of plaintiffs was inconclusive as to the quantity of apples sold and the jury should have been told that unless the contract was reasonably definite in this respect, there could be no valid sale, and in such event, their finding should be for defendant.

■■■ Defendant insisted throughout the trial that there was a contract of brokerage, valid and certain as to quantity. If the agreement as to quantity was sufficiently certain and definite to meet the requirements of a *contract of brokerage*, as contended for by him (and we think it was), then by the same token, it would be certain enough in that particular to meet the requirements of a *contract of sale*. That, we think, was sufficient ground and justification for refusing the instruction.

There are, however, additional reasons why the instruction

was properly refused. The evidence offered by the vendors was to the effect that the sale was of *all* the York apples in their Alta Vista Orchard (which, when delivered, amounted to fifteen truck loads). The quantity, weight and grade were to be determined upon delivery at the Co-op.

The quantity claimed by defendant to be the subject matter of the transaction was all the apples that were delivered to and accepted by the Co-op, the exact amount to be there determined by weighing when delivered. Though the quantity was not definitely known at the time the transaction was entered into, under either alleged contract, a definite means and formula were provided by which it would be ascertained.

Quantity was not a matter in dispute under either theory of the case. It was subject to definite ascertainment under and through the specific terms of each contract. If the means by which the quantity is to be ascertained is sufficiently definite to enable the contracting parties to determine the quantity, the terms of the contract in that respect are sufficiently certain and the sale is complete. *Haxall Bros. & Co.* v. *Willis*, 15 Gratt. (56 Va.) 434, and *Buskirk Bros.* v. *Peck*, 57 W. Va. 360, 50 S. E. 432. Each contract contended for measured up to this requirement. The sole issue was which was the contract entered into.

Yet the instruction sought to allow the jury to say that a contract which contains as one of its terms the means and formula by which the quantity of its subject matter can and is to be definitely ascertained is not sufficiently certain and definite in that respect to support a verdict. If given, it would have permitted the jury to determine—not factually, but as a matter of law,—that the evidence bearing upon the quantity of applies involved was not sufficiently certain to support a valid sale. This would have allowed the jury to invade the province of the court and the instruction was properly refused.

The judgment of the trial court is affirmed.

*Affirmed.*